THOMAS WELCH vs. MARY J. Y. KETCHUM.

Argued Dec. 9, 1891. Decided Jan. 21, 1892.

**Recording Act 1878, (G. S. Ch. 40, § 21,) Applied.**—When the title to real estate appears of record to have been in an intestate at the time of his decease, and thereafter the property has been conveyed by the heir at law to a *bona fide* purchaser for value, the latter acquires the title, as against a grantee named in an unrecorded deed executed by the intestate in his lifetime.

**Tenant in Common Paying Taxes—Rights of, as against Bona Fide Purchaser.**—Taxes paid upon the common property, or an amount paid to procure a conveyance from one who claims title to the same adversely and under a tax deed, by a tenant in common, cannot be made a charge upon the estate and interest of a cotenant after such estate and interest have passed into the hands of a purchaser without notice.

**Notice of Claim for Taxes Paid, when Tax Deed is not.**—*Held*, that the record of the tax deed and of the conveyance from the grantee therein named would not be notice of such a claim.

v.48m.—16

Appeal by defendant from an order of the district court, Benton county, *Baxter*, J., made June 23, 1891, refusing a new trial.

Leander S. Ketchum and William H. Coffin, of the state of New York, purchased of the United States, July 1, 1856, section 23, in township 38 north, of range 30 west, in Benton county, and held it as tenants in common. On May 11, 1860, Coffin and wife quitclaimed to Ketchum his interest in the north half of the land, but the deed was never recorded. Ketchum died intestate January 1, 1869, leaving a widow, (the defendant,) but no kindred, and she inherited his estate. 1866 G. S. ch. 46, § 1, subd. 9.

Afterwards Coffin died intestate, and his heirs, on February 25, 1885, quitclaimed the undivided half of the entire section to plaintiff. Their deed to him was recorded May 16, 1885. Plaintiff paid them $320 for it, and bought without any knowledge or notice of the prior deed to Ketchum of Coffin's interest in the north half. The section is all vacant land, and is worth $1,600. No part of it has ever been occupied.

Taxes on this whole section of land for the year 1870 were levied, and remained due and unpaid. The county treasurer offered the land for sale at public auction to pay these taxes. No one bid, and it remained unsold for want of bidders, and was forfeited to the state subject to redemption. Thereafter, on July 27, 1872, one Mrs. P. M. Wing paid into the county treasury $118.57, the amount of the taxes, penalty, interest, and costs then due upon the land, and received a certificate of purchase thereof. 1866 G. S. ch. 11, § 129. The land was not redeemed, and on June 7, 1873, she received a tax deed and it was recorded the same day. This deed was void on its face. She thereafter paid the taxes annually for ten more years, in all $460.54. On October 18, 1882, Mrs. Ketchum, the defendant, paid to Mrs. Wing all these taxes and interest thereon, and took from her a quitclaim deed of the entire section, and had it recorded that day. She thereafter paid the taxes on the land for three more years, to 1885, $91.58.

When plaintiff purchased of Coffin's heirs he had no notice or knowledge as to who paid these taxes, or that Coffin or his heirs had not paid the half of them according to his and their apparent owner-

ship in the land, but the tax receipt stubs in the county auditor's office showed who paid these taxes each year from A. D. 1871, down.

The plaintiff, Thomas Welch, commenced this action, December 4, 1885, to have the land partitioned equally between him and the defendant, Mary J. Y. Ketchum. The facts above stated were agreed upon by stipulation between the parties, and the court made findings April 25, 1891, and directed judgment to be entered, that each party owned one half the land free of any lien for taxes paid by the other, and appointing referees to partition it between them.

The defendant on notice moved the court for a new trial. This was denied, and she appealed.

*G. W. Stewart,* for appellant.

Under 1878 G. S. ch. 11, § 97, as amended by Laws 1881, ch. 10, § 19, which statute was in force at the time defendant purchased and plaintiff procured the Coffin interest, a tax-title purchaser, whose title was invalid, could recover from the county the amount paid for the tax title, and interest, penalties, and costs, and the amount refunded to the purchaser by the county could be reassessed against the land, and this notwithstanding the fact that the land had been sold to a *bona fide* purchaser. *County of Olmsted* v. *Barber,* 31 Minn. 256; *Tallman* v. *City of Janesville,* 17 Wis. 71. The interest, then, which the defendant acquired from Mrs. Wing, was the amount paid for the land at the tax sale, and all subsequent taxes, with 10 per cent. interest added, and for this amount the land was absolutely bound.

In this case, if no taxes had ever been paid upon the land, there could be no doubt but that the plaintiff, in purchasing, would have taken subject to the claim of the state against the land for taxes. Such being the fact, why should he not take subject to the assignee of the state,—subject to the claim of one who had released the land from the state's claim? It is therefore insisted that the claim of *bona fide* purchaser gives him no superior rights in the land as against defendant's equities, growing out of the fact that she had removed the cloud upon the title occasioned by the tax sale to Mrs.

Wing, and the subsequent payment of taxes by Mrs. Wing. It would be unconscionable to hold that because she had done her whole duty she should lose, while the plaintiff, whose grantors omitted their duty, should be benefited by it.

The doctrine of *bona fide* purchaser is not a rule of property or of title in its equitable conception. It simply means this: that from the relation subsisting between two parties equity refuses to interfere to aid the plaintiff in what he is seeking to obtain, because it would be inequitable to do so, and parties must be left to their pure, legal rights and liabilities. Pom. Eq. Jur. 738, 739.

Is a *bona fide* purchaser from an heir at law protected by the recording acts (1878 G. S. ch. 40, § 21) against the title from the ancestor whose deed has not been recorded? A purchaser from an heir at law is in no better position than the heir from whom he purchased. The heir only inherits that property of which his ancestor dies seised. 1878 G. S. ch. 46, § 1.

In this case the ancestor had deeded all his interest in the north half of the section to another, under whom defendant claims; consequently he was seised of no interest in the land. The unrecorded deed of the ancestor would divest the title of the heir. He is not entitled to the position of a subsequent purchaser; he is a mere volunteer. *Dodge* v. *Briggs*, 27 Fed. Rep. 160; *Hill* v. *Meeker*, 24 Conn. 211; *Hancock* v. *Beverly's Heirs*, 6 B. Mon. 531; *Webb* v. *Doe*, 33 Ga. 565.

*Taylor, Calhoun & Rhodes,* for respondent.

Conceding that one cotenant who has paid the taxes upon the entire property can compel his cotenant to reimburse him in an action of partition, yet the rule falls far short of substantiating appellant's claim. At the time of payment, respondent was not a cotenant. He owed no duty either to appellant or the property. No incumbrance was removed from his property. At the time he purchased the property the taxes were all paid, and he had no notice or knowledge that appellant had paid them. The presumption was that they had been paid by the persons to whom they were properly chargeable. He is protected by the recording act. 1878 G. S. ch. 40, § 21; *Selby*

v. *Stanley,* 4 Minn. 65, 75, (Gil. 34, 45;) *Wilcox v. Leominster Nat. Bank,* 43 Minn. 541; *Stover* v. *Cory,* 53 Iowa, 708; *Missouri Pac. Ry. Co.* v. *Maffitt,* 94 Mo. 56.

Appellant did not acquire a statutory lien by virtue of the tax deed and the quitclaim from Mrs. Wing to her. 1866 G. S. ch. 11, § 142. In order to create such lien, there must have been a valid assessment and a valid levy of taxes; the taxes must have been delinquent and have remained unpaid; and the title under the tax deed must have failed only on account of some irregularity in the acts of the officers relating to the sale, and not on account of any of the prior proceedings. *Barber* v. *Evans,* 27 Minn. 92.

In the case at bar there is no proof that any taxes were ever assessed, or were levied, or were ever due, or were ever delinquent, or that the lands were ever forfeited to the state. *Cogel* v. *Raph,* 24 Minn. 194; *Sheehy* v. *Hinds,* 27 Minn. 259; *Sherburne* v. *Rippe,* 35 Minn. 540.

This tax deed is void on its face, does not affect the title, and its registration gives no notice to any person. *Oglesby* v. *Hollister,* 76 Cal. 136.

It is also well settled that a record is not constructive notice to one who does not trace his title to the same source. *Burke* v. *Beveridge,* 15 Minn. 205, (Gil. 160.)

Respondent relies upon being a *bona fide* purchaser and upon the recording acts. That these acts protect a *bona fide* purchaser from an heir whose ancestor died seised of the land, as shown by the records, is well settled. *Lyon* v. *Gleason,* 40 Minn. 434; *Kennedy* v. *Northup,* 15 Ill. 148; *Rupert* v. *Mark,* 15 Ill. 541; *Powers* v. *McFerran,* 2 Serg. & R. 44; *Earle* v. *Fiske,* 103 Mass. 491; *Youngblood* v. *Vastine,* 46 Mo. 239.

COLLINS, J. Action for partition, the facts, over which there was no controversy, being very simple. Prior to 1860 the general government duly sold, and by its patents conveyed, to Leander S. Ketchum and William H. Coffin, jointly, the section of land in dispute. These patents were duly recorded. On May 11th of that year, the latter, his wife joining, executed and delivered to Ketchum a quitclaim deed of the north half of the section, but this deed was

never recorded. From that time on, until 1869, Ketchum regularly paid the taxes on the entire premises. He then died intestate, his sole heir being defendant herein, his widow. In 1873 the auditor of the county wherein the lands were situated executed and delivered to one Mrs. P. M. Wing a tax deed of the same, for taxes, penalties, and costs claimed to be due and delinquent, and this deed was immediately placed on record. Mrs. Wing for 10 years thereafter paid the taxes annually levied upon the premises, as they became due. In October, 1882, in consideration of a payment to her of the amounts which she had paid upon the land, with interest, Mrs. Wing, her husband joining, executed and delivered to the defendant a quitclaim deed of the same, which deed was recorded when the plaintiff acquired his rights, as hereinafter stated. The defendant paid the taxes upon the whole section as the same became due for the years 1882, 1883, and 1884. Prior to February 25, 1885, William H. Coffin died intestate, and on that day his heirs at law joined in the execution and delivery to plaintiff of a quitclaim deed to the land, which deed was recorded May 16th of the same year. Plaintiff paid a valuable consideration for the lands to the heirs, and had no notice or knowledge that defendant had or claimed any title to the premises, except such as appeared from the record, and had no actual notice or knowledge of any payments of taxes made by Mr. Ketchum in his lifetime, or by Mrs. Wing, or by this defendant. Upon the trial it was conceded that the tax deed to Mrs. Wing was not only void upon its face, but that there was no tax list showing any taxes to be unpaid or delinquent upon the land when it was executed, and also that the county auditor had no right or authority to issue it. On these facts it was contended by defendant that she was the owner in fee of the north half, and also of an undivided half of the south half, of the section; and, further, that in this action a share of the amounts paid by Mr. Ketchum and herself as taxes, and of the sum paid to Mrs. Wing for the quitclaim deed as aforesaid, such share to be determined by the extent of plaintiff's title and interest in the premises, as found by the court, should be adjudged a specific lien upon such title and interest, and in this action. As before indicated, the court below held

that plaintiff was the owner in fee of an undivided half of the section, wholly divested of defendant's claim for taxes paid, and ordered that partition be made accordingly.

1. The case of *Lyon* v. *Gleason*, 40 Minn. 434, (42 N. W. Rep. 286,) would seem to dispose of defendant's contention that, by the unrecorded deed of Mr. and Mrs. Coffin, the heirs of the former were divested of title to the north half of the section, so that no interest whatsoever in that part of the land could be transferred by them. In that case the facts were slightly different, for the ancestor died testate, and his will had been duly probated before the heir conveyed. But there can be no possible difference in principle, and, under the recording acts, it is well settled that an unrecorded deed is not valid after the death of a grantor, dying intestate, as against one holding by a recorded deed from the grantor's heir, without notice of the former deed. *Earle* v. *Fiske*, 103 Mass. 491; *Kennedy* v. *Northup*, 15 Ill. 148; *Powers* v. *McFerran*, 2 Serg. & R. 44; *Youngblood* v. *Vastine*, 46 Mo. 239.

2. When the persons hereinbefore named paid the taxes, plaintiff had no interest in the premises, and consequently owed no duty respecting the same. So that, whatever may be the law relating to the rights of joint tenants or tenants in common to recover, one from the other, amounts paid to remove tax titles or liens from property, it has no application here; and, although referring to the subject, appellant's counsel does not insist that it has. But his main contention is that respondent's claim as a *bona fide* purchaser from the Coffin heirs gave him no superior right in the land, as against the equities of appellant arising out of the fact that she had removed a cloud upon the title and incumbrance upon the property occasioned by the execution and record of the tax deed to Mrs. Wing, and by the payment of taxes subsequently and duly levied. When the respondent purchased, the title of record appeared to be and was perfect in Coffin at the time of his decease, save as it might be impaired by the registration of two deeds, one the inherently defective tax deed, the other Mrs. Wing's conveyance to appellant, who otherwise was an absolute stranger to the record title. If any notice could be attributed to respondent by virtue of a record of either of these instruments, it would

be that appellant was asserting a title to the property hostile to the parties to whom the government had issued its patents, or their successors in interest. There was not the slightest intimation that appellant had or claimed to have any rights in the property except such as were predicated upon the Wing deed. The taxes appeared to have been paid, presumptively, by the parties whose duty it was to pay; and, while an investigation in the office of the county auditor or treasurer might have revealed the names of the persons who had done this, the respondent was under no obligation to make such an investigation. Even if he was, and had examined, he would have learned that Mrs. Wing, a person claiming title to the entire section adversely to those to whom it had been patented or their successors in interest, had paid the taxes for ten years after procuring and recording her adverse title, and that thereafter appellant, the person to whom Mrs. Wing had conveyed, carried the burden of taxation for the period of three years, or up to about the time the premises were deeded to respondent. This would have confirmed the latter in the belief that appellant was an adverse claimant to the whole under the tax deed, not that she claimed to be an owner in fee of an undivided interest as the heir at law of Mr. Ketchum. The argument that, by the record of the quitclaim deed from Mrs. Wing, full notice of appellant's alleged equities was given to would-be purchasers, is based, in part, upon the false assumption that a tax title, valid on its face, at least, had been secured and put upon record, and partially upon the like assumption that from the records it appeared that appellant was or claimed to be a tenant in common with Coffin or his successor in interest. But, had either or both assumptions been well founded, it is difficult to see, in view of the decisions of this court, how appellant's position could be sustained, unless it was held that an equitable lien for taxes paid upon the common property by one joint tenant or tenant in common outranked and was to be preferred above an equitable lien for purchase money, or the equitable right of a purchaser to have a deed reformed as against the lien of a judgment, or as superior to a lien actually reserved by contract, but unrecorded. See *Selby* v. *Stanley,* 4 Minn. 65, (Gil. 34;) *Wilcox* v. *Leominster Nat. Bank,* 43 Minn. 541, (45 N. W. Rep. 1136;) *Stover* v. *Cory,* 53 Iowa,

708, (6 N. W. Rep. 64.)   Nothing can be claimed for appellant under 1866 G. S. ch. 11, § 142.   See *Barber* v. *Evans*, 27 Minn. 92, (6 N. W. Rep. 445;) *Brown* v. *Corbin*, 40 Minn. 508, (42 N. W. Rep. 481.) Order affirmed.

(Opinion published 51 N. W. Rep. 113.)