# WILLIAM V. BARNES v. ANTON GUNTER, JR.[1]

July 15, 1910.

Nos. 16,544—(110).

**Adverse possession began upon sale by life tenant.**

A will executed in a foreign state contained a devise of real estate in Minnesota to a tenant for life, with the following provision: "And as I intend this bequest as a provision for the support of my son and his family, I direct that his said life interest in the said farm shall not be subject to be sold by him, and that upon any sale of it by him, or by any other person on account of his liabilities or engagements, or otherwise, the said bequest of the remainder to his children shall immediately take effect as in case of his death, saving the rights and claims of any child or children who may be afterwards born."

The testator died in 1865. The life tenant conveyed the entire estate by warranty deed in 1872, and the subsequent grantees, from that time, have been in the actual, open, and exclusive possession.

*Held*, the life tenancy ceased upon the conveyance of the premises by the life tenant, the remainderman became entitled to immediate possession, and the grantee and his successors became owners in fee by adverse possession.

**Good faith purchaser.**

Lewis, J., is of the opinion that appellant cannot recover on the further ground that respondents were purchasers in good faith from the heirs of the testator, without any knowledge of the will.

Action in the district court for Goodhue county to recover possession of an undivided one-half of certain real estate and the sum of $5,000, the value of the crops, rents and profits, and the use and occupation of the premises.

The complaint alleged that Edward A. Barnes died at Norfolk, Virginia, on December 1, 1864, and at the time of his death was the owner in fee simple of the property; that his last will and testament was duly admitted to probate in the corporation court of the city of Norfolk, on February 27, 1865; that a duly authenticated

[1] Reported in 127 N. W. 398.

copy of the will was duly admitted to probate in the probate court for Goodhue county on November 4, 1904; that the testator left him surviving his son, William Edwin Barnes, and two grandsons, the plaintiff and Harry W. Barnes, the sons of said William Edwin; that Harry W. died in the year 1889 and left him surviving two children, Laura Barnes and Dennis Barnes; that said William Edwin died in Arkansas on April 24, 1890, and left him surviving the plaintiff and his said two grandchildren; that at the time of his death said Edward A. Barnes was the owner of said real estate on which his son William Edwin Barnes resided and was not the owner of any other real estate in Goodhue county; that the testator devised said real estate to his son William Edwin for and during his natural life and subject to said life estate to such of the children of said William Edwin as might be living at the time of the death of said William Edwin and to the descendants of any deceased child, such descendants to take the share of their parent; that the final decree of the probate court for Goodhue county made on March 31, 1905, assigned said real estate to William Edwin Barnes for and during his life and, subject to said life estate therein, to William V. Barnes and Laura Barnes and Dennis Barnes in the respective portions of an undivided one-half and undivided one-fourth; that a copy of said last will, the certificate of probate and said final decree was recorded in the registry of deeds of that county on April 5, 1905; that defendant ever since April 24, 1890, has been in possession of the premises and has appropriated to his own use all the crops, rents and profits from said premises.

The answer, inter alia, alleged that William Edwin Barnes on April 6, 1872, in direct violation of said will, conveyed the premises to William S. Wells and the deed was recorded in Goodhue county on May 4, 1872; alleged that the cause of action did not accrue within fifteen years next before the commencement of the action; that William S. Wells on June 1, 1872, by deed of warranty conveyed the premises to Anthony Gunter, who pursuant to the deed entered into possession of the premises as owner thereof and continued in the exclusive and adverse possession thereof until May 7, 1892, during which time he cultivated the same; that on the

latter date Anthony Gunter or Anton Gunter, Sr., by deed of warranty conveyed the land to defendant, who on that date entered into possession of the premises as the owner and continued in the exclusive and adverse possession of the land until the present time. The reply admitted that the defendant had used and occupied the premises without plaintiff's knowledge since May 7, 1892.

The deed from William E. Barnes and wife to William S. Wells dated April 6, A. D. 1872, contained the following covenants: "And the said William E. Barnes and Ann Barnes, parties of the first part, do covenant with the said party of the second part, his heirs and assigns as follows: First, that they are lawfully seized of said premises. Second, that they have good right to convey the same. Third, that the same is free from all incumbrances except a mortgage given to Howe Graves & Co. on which is now due $264, also a mortgage given to Josiah Thompson on which there is now due about $258, also $125 taxes. And fourth, that the said party of the second part, his heirs and assigns, shall quietly enjoy and possess the same; and that they will warrant and defend the title to the same against all lawful claims." This deed was acknowledged the day of its date and recorded on May 4, 1872.

A deed from Harriet Barnes, William B. Rodman and Laura A. Rodman, his wife, Walter S. Barnes and Louise M. Barnes, his wife, Larvinia F. Barnes and Preston P. Barnes dated January 17, 1872, and acknowledged on May 20 and 22, 1872, quitclaimed the premises in question to William E. Barnes and the habendum clause contained these words: "Intending hereby to convey all rights, title and interest including all rights of dower which the said Harriet Barnes has in or to said premises as the widow of Edward A. Barnes, deceased, also all right, title or interest which said William B., Laura A., Walter S., Louisa M., Larvinia F., and Preston P., or any or either of them, have in said premises as the heirs at law of said Edward A. Barnes, deceased, or in any other way or manner whatever." This deed was recorded in Goodhue county on June 1, 1872.

The case was tried before Williston, J., who found in favor of defendant. Plaintiff's motion to strike out the findings and con-

111 M.—25.

clusions of law and substitute other findings and conclusions of law was denied by Crosby, J. From an order, Crosby, J., denying plaintiff's motion for a new trial, he appealed. Affirmed.

*Frederick W. Foot,* for appellant.

The provision in the will of Edward A. Barnes (quoted infra, page 392) is repugnant to the grant of the life estate, against public policy, and void. Gray, Restraints on Alienation of Property (2d Ed) § 134, and cases cited; McCleary v. Ellis, 54 Iowa, 311; Blackstone v. Davis, 21 Pick. 42; McCormick v. Gates, 75 Iowa, 343; Mandlebaum v. McDonell, 29 Mich. 78, 107; Cullen v. Sprigg, 83 Cal. 56, 64; Craig v. Wells, 11 N. Y. 315, 320; Jackson v. McClallen, 8 Cow. 295. Limitations and restrictions on the use of property are not favored. It is contrary to public policy to tie up property with restrictions and prohibitions on its use. Eckhart v. Irons, 128 Ill. 568; Hutchinson v. Ulrich, 145 Ill. 336; Hays v. St. Paul, 196 Ill. 633. In order to be valid the conditions and restrictions must not be inconsistent with or repugnant to the estate granted. Pynchon v. Stearns, 11 Metc. (Mass.) 312; Bassett v. Budlong, 77 Mich. 338; Carradine v. Collins, 7 S. & M. 428; Teaney v. Mains, 113 Iowa, 53; Monroe v. Hall, 97 N. C. 206. In a deed granting life estate to one with remainder in fee to his children, a condition against alienation by the grantee is void. McCleary v. Ellis, 54 Iowa, 311.

Even though we assume that the remainderman could not waive forfeiture and that upon the alienation by the life tenant the remainder estate at once took effect absolutely, still the life tenant or his grantees remaining in possession of the property would, as a matter of law, be regarded as tenants, and the relation between them and the remainderman would be that of landlord and tenant, under which relationship it is clearly established that the tenant could not assert any adverse title. Caufman v. Presbyterian, 6 Bin. 59; 1 Cyc. 1058, and numerous cases cited. The mere nonpayment of rent by the tenant and the failure of the landlord to demand it, even though for a considerable period of time, raises no presumption of adverse holding by the tenant. 1 Cyc. 1061, and cases cited in

note 33. Not only is the tenant precluded from relying on his possession to bar his landlord, but also all persons who come in under or derive possession from him in any manner however remotely. 1 Cyc. 1062, and cases cited. This doctrine applies to the grantee in fee of the tenant, even though the grantee take the deed in ignorance of the fact that his grantor stood in the relation of tenant, the latter denying any such relationship. 1 Cyc. 1062, and cases cited in notes 42 and 43; Steadman v. Steadman, 143 N. C. 345; Graves v. Mitchell, 90 Wis. 306; Babcock v. Collins, 60 Minn. 73.

Upon the alienation by the life tenant his continued possession and that of those deriving title from him constituted a resulting trust for the benefit of the remainderman, and as between a trustee and cestui que trust the statute of limitations has no application and no lapse of time constitutes a bar. 1 Cyc. 1062, and cases cited; 1 Cyc. 1066, and cases in notes 73, 74, 76 and 77. And a purchaser with knowledge of the trust becomes so far a trustee for the beneficiaries that he cannot set up title to the property by adverse possession in the absence of notice or knowledge thereof brought home to the beneficiary. 1 Cyc. 1067, and cases cited in note 80.

The argument that the respondent is in position of innocent purchaser for value might be a clincher excepting for three facts; first, that William S. Wells or William E. Barnes did not purchase the property from all of the heirs at law of Edward A. Barnes, deceased, relying upon the presumption of intestacy and without notice of a will; second, the claim of innocent purchaser and of title in reliance upon the presumption of intestacy is not raised in the pleadings in this case, therefore is not one of the issues, and cannot be raised for the first time in this court, even if pleaded; and third, William E. Barnes and his grantees, being tenants at sufferance, could not acquire adverse title by purchase from heirs at law.

The facts show William S. Wells, in purchasing the land, could not have relied upon the presumption of intestacy because the deed to William S. Wells does not mention anything about heirs of Edward A. Barnes, but is a plain warranty deed of the entire property by William E. Barnes, the life tenant; because William E.

Barnes is only one of numerous heirs; because the deed from the other heirs while dated prior to that time as a matter of fact could not have been delivered because it was not acknowledged until nearly two months afterward; the deed from William E. Barnes to Wells being made and acknowledged April 6, and the deed from the other heirs being acknowledged in Virginia May 22. It could hardly be contended under these circumstances that Wells relied upon a presumption of intestacy, and upon the deed from the other heirs to William E. Barnes, at the time he purchased the property. It is quite beyond the range of reasonable probability to suppose that William E. Barnes, when he took the conveyance from the other heirs at law of Edward A. Barnes, relied upon any presumption of intestacy. One of the other heirs, Harriet Barnes, the widow, was named as executrix of the will by the corporation court in the city of Norfolk, Virginia, according to the authenticated probate thereof, February 27, 1865, more than seven years before the quitclaim deed was made by the other heirs to William E. Barnes. We are not aware of any evidence whatever in the record tending to prove that William E. Barnes or William S. Wells relied on a presumption of intestacy, or had no knowledge of the will, and it seems to us there is no foundation whatever on which an inference of such facts could legally rest.

*A. J. Rockne,* for respondent.

In this case, being an ejectment action, appellant must stand upon the strength of his own title and cannot avail himself of the weakness of the title of the respondent. Pace v. Chadderdon, 4 Minn. 391 (499); Henderson v. Wanamaker, 79 Fed. 736; Greve v. Coffin, 14 Minn. 263 (345).

The plaintiff must make out a prima facie case in one of the following modes: (a) By showing a paper title running back to the government. Miller v. Long Island, 71 N. Y. 380, 383; Mobley v. Griffin, 104 N. C. 112, 114. (b) By showing a paper title from a grantor who is admitted by the respondent to have been an owner. Horning v. Sweet, 27 Minn. 277. (c) By proof of possession of his ancestors. Sherin v. Larson, 28 Minn. 523; McRoberts v. Berg-

man, 132 N. Y. 73.   (d) As against a defendant who has disseized the plaintiff, by proof of actual or peaceable possession under color of title at the time of the ouster by the defendant.   Sherin v. Bracket, 36 Minn. 152; Carleton v. Darcy, 90 N. Y. 566.   (e) By showing title from the person under whom the defendant claims. Horning v. Sweet, supra.   (f) By proving adverse possession for the statutory period.   Baker v. Oakwood, 123 N. Y. 16.   (g) By proving facts which estop the defendant from disputing the title of the plaintiff, i. e., by showing the relationship of landlord and tenant and the like.   No attempt has been made to comply with any of the foregoing methods of showing title except the first, i. e., a paper title running back to the government.   This plaintiff has failed to do because of failure to show that Francis H. Smith, the patentee, was the same person as F. H. Smith, the grantor of William E. Barnes.

The presumption of law is that E. A. Barnes died intestate, and this presumption was strengthened by the running of a period of nearly eight years and no will appearing in this state.   The respondent was then justified in relying on the legal presumption of intestacy and in buying the land on the record title as it appeared. Chase v. Woodruff, 133 Wis. 555.

A purchaser from the heirs of the deceased who buys in good faith is protected as to right of claimants under a subsequent will.   McCormick v. Sullivant, 10 Wheat. 192; Slayton v. Singleton, 72 Tex. 209; Van Syckel v. Beam, 110 Mo. 589; Catholic University v. Boyd, 227 Ill. 281; Bliss v. Seeley, 191 Ill. 461; Harrison v. Weatherby, 180 Ill. 418; Safford v. Stubbs, 117 Ill. 389; Lewis v. Barnhart, 145 U. S. 56, 79.

The doctrine of innocent purchaser for value, is a common law doctrine and exists regardless of statute.   23 Am. & Eng. Enc. (2d Ed.)   447 ( ?)   It is not available as a ground for affirmative relief to a party, but it is a perfect ground of defense.   Beekman v. Frost, 18 Johns. 544.

It is contended that Minnesota has no statute limiting the time within which wills can be probated.   This is conceded, but if a will is not probated until fifteen years have elapsed from the death of the testator, how can it be said that a devisee, out of possession of real

estate, has been seized or possessed of the premises within the fifteen years? Our statute of limitations provides that no action for the recovery of real estate shall be maintained unless it is made to appear that the plaintiff, his ancestor, predecessor or grantor has been seized or possessed of the premises within fifteen years before the commencement of the action. Dead men cannot hold title to real estate, and section 3664 specifically provides that no will shall be effectual to pass title to real estate unless probated. Can it be said in this case that the appellant, his ancestor, predecessor or grantor has been seized or possessed of these premises within fifteen years? His ancestor was not because he died in 1864. His predecessor was not because he sold in 1872. He himself was not because he never was on the place since 1866, when he moved to Zumbrota. Where does it anywhere appear that the plaintiff, his ancestor, predecessor or grantor has been seized or possessed of these premises within fifteen years before the commencement of this action? The will of Edward A. Barnes resting in a pigeon hole of the corporation court of the city of Norfolk, Virginia, could not seize or possess appellant of anything, a remainder in fee or anything else as to lands in Minnesota. Van Syckel v. Beam, 110 Mo. 589.

The Minnesota statute of limitations is one thing, the common-law principle of adverse possession is quite another thing, and we submit that under our own statute of limitations it nowhere appears that the appellant is within the statute.

. Appellant contends the provision in the will quoted is void and cites Gray, Restraints on Alienation of Property (2d Ed.) § 134, and cases cited. How appellant's counsel could fall into such a lamentable error we fail to understand. He has evidently construed this provision as a restraint on alienation. It is not; it is a forfeiture upon alienation and is valid. Gray, Restraints on Alienation of Property (2d Ed.) §§ 78, 87, and cases cited; 24 Am. & Eng. Enc. (2d Ed.) 870. All the cases cited by counsel are cases where there was a restraint on alienation, and no provision for cesser except in the case of Potter v. Crouch, 141 U. S. 296, and this case involved a fee where a different rule prevails. Gray, Restraints on Alienation of Property (2d Ed.) §§ 21, 22.

The proviso in the will being valid, counsel upon his own theory is barred by the statute. Appellant's interest then vested in 1872, as though the life tenant were dead.

After the death of the original life tenant, the continued possession of his vendee becomes adverse as to the remainderman or reversioner. 1 Am. & Eng. Enc. (2d Ed.) 809, and cases cited.

The estate created by the will of Edward A. Barnes is not an estate on condition. It is a conditional limitation and terminates without any act on the part of the remainderman.

A condition followed by a limitation over to a third person in case the condition was not fulfilled or there be a breach of it is termed a conditional limitation. A condition determines an estate after breach, upon entry or claim by the grantor or his heirs, or the heirs of the devisor. A limitation marks the period which determines the estate without any act on the part of him who has the next expectant interest. Upon the happening of the prescribed contingency, the estate first limited comes at once to an end, and the subsequent estate arises. If it were otherwise, it would be in the power of the heirs to defeat the limitation over by neglecting or refusing to enter on the breach of condition. Plainly the proviso in the will of Edward A. Barnes comes within the definition of a conditional limitation. On a sale of the premises by the life tenant the interest of the remaindermen was to vest "immediately as though he were dead."

The cesser provision of the will is valid and vested the remainder in fee in possession on the sale by William E. Barnes to Wells in 1872. Bramhall v. Ferris, 14 N. Y. 41; Emery v. Van Syckel, 17 N. J. Eq. 564; Nichol v. Eaton, 91 U. S. 716; Rochford v. Hackman, 9 Hare, 475. The same limitation can be made by deed, the gift over being a conditional limitation and vests without entry. Camp v. Cleary, 76 Va. 140; Conger v. Lowe, 124 Ind. 368; Hoselton v. Hoselton, 166 Mo. 182; Furbee v. Furbee, 49 W. Va. 191.

Where one claims the benefits of the principle that the tenant cannot deny his landlord's title, he must show affirmatively that the relationship of landlord and tenant exists between the parties. Lakin v. Roberts, 54 Fed. 461, affirming 33 Fed. 333. Unless a tenant

has entered under the lease from the landlord or occupied under the lease, the estoppel to deny the landlord's title does not arise. Bain v. Matteson, 54 N. Y. 663; Nerhooth v. Althouse, 8 Watts, 427.

LEWIS, J.

In 1864 Edward A. Barnes died at Norfolk, Virginia, leaving his last will and testament, which was probated in that city February 27, 1865. The real estate involved in this action is situate in the county of Goodhue, in this state, and was devised by Edward A. Barnes to his son, William E. Barnes, for life, and after his death to such of his children as might then be living and to the descendants of any deceased children. The will contained the following provision:

"And as I intend this bequest as a provision for the support of my son and his family, I direct that his said life interest in the said farm shall not be subject to be sold by him, and that upon any sale of it by him, or by any other person, on account of his liabilities or engagements, or otherwise, the said bequest of the remainder to his children shall immediately take effect as in case of his death, saving the rights and claims of any child or children who may be afterwards born."

On April 6, 1872, William E. Barnes and wife conveyed the real estate to William S. Wells, by warranty deed, which was recorded May 4, 1872. On the first of June, 1872, William S. Wells and wife conveyed by warranty deed to Anthony Gunter, Sr.; and on May 7, 1892, Anthony Gunter and wife, by warranty deed, conveyed to Anton Gunter, the respondent in this action, who has occupied the land from May 7, 1892, down to the time of the trial. Anthony Gunter, his father, occupied the land from February, 1872, until the conveyance to his son in 1892. William E. Barnes left the state of Minnesota in 1872, and moved to Paris, Arkansas, where he died April 24, 1900, leaving surviving him the appellant in this case, William V. Barnes, who claims title as remainderman under the will.

Appellant was born in 1859, and until about 1904 was ignorant

of the provisions of the will and of his rights thereunder. The will was probated in Goodhue county in 1904, and this action was commenced in 1905 for the purpose of securing possession of the property, and for the value of the rents and profits. It was admitted at the trial that respondent and his immediate grantor were in the actual and exclusive possession of the land since May 7, 1892.

The record suggests several questions involving the construction of the will: The effect of the provision against alienation, adverse possession as against the plaintiff prior to the death of the life tenant, whether the probate of the will in Virginia was properly authenticated, and whether respondent and his immediate grantors were innocent purchasers, in good faith, from the heirs of the testator, without any knowledge of the will.

W. E. Barnes conveyed to W. S. Wells the life estate only, although the deed purported to convey the entire estate. Authority for this conclusion is found in section 3343, R. L. 1905 (G. S. 1866, c. 40, § 5), which provides that a conveyance by a tenant for life, purporting to grant a greater estate than he possessed, shall not work a forfeiture of his estate, but shall pass to the grantee all the estate which such tenant could lawfully convey. The court is of opinion that the provision in the will to the effect that the estate should vest in the remainderman (plaintiff) immediately upon the execution of a conveyance of the land by his father, the life tenant, was valid, and that the plaintiff became entitled to possession on April 6, 1872, and that, the defendant and his immediate grantors having been in the actual and exclusive possession of the land since 1872, defendant acquired title in fee by adverse possession. Lewis v. Barnhart, 145 U. S. 56, 79, 12 Sup. Ct. 772, 36 L. Ed. 621.

Speaking for myself, I have found some difficulty in coming to this conclusion. The plaintiff, as remainderman, never had any knowledge of the will, and consequently had no opportunity to declare a forfeiture of the life estate, or to take possession of the land. But it seems clear to me that appellant cannot recover for other reasons:

Respondent, and his grantors, were entitled to rely on the presumption that the testator, Edward A. Barnes, died intestate. One

defense pleaded was that on April 6, 1872, William E. Barnes violated the terms of the condition in the will by conveying the property to William S. Wells; but the answer also states that Anthony Gunter, Sr., and respondent in good faith, peaceably took possession of the premises without any actual notice of any defect violating the deeds of conveyance. William E. Barnes resided on the farm from 1860 until about 1866, and soon thereafter moved to Arkansas, where he died in 1900. During all of that time it does not appear that he ever knew anything about the will. His son, appellant here, became of age in 1881, and it was stated during the argument, to account for his negligence in not probating the will in Goodhue county prior to 1904, that he never knew there was such a will until it was accidentally found during that year.

There is no evidence that the will was ever heard of or brought to the attention of respondent, his father, or his grantor, William S. Wells. The deeds from the life tenant and the other heirs of Edward A. Barnes contained no reference to a will, and the grantors were not described as devisees or legatees. Barnes assumed to convey the entire title, and procured quitclaim deeds from the other heirs, by virtue of which a complete title vested in Mr. Wells, subject to the provisions of the will. These quitclaim deeds from the several heirs of Edward A. Barnes were not executed until about a month after the execution of the warranty deed from Barnes to Wells. But in the absence of evidence to the contrary it should be presumed that they were secured pursuant to an understanding that the title was thus to be made complete. In the absence of any evidence of knowledge of the will, or of the nature of William E. Barnes' interest in the estate, or of facts to put them upon inquiry, Wells and his grantees were entitled to rely upon the presumption that Edward A. Barnes died intestate, and were justified in assuming that the title was vested in his heirs. In Weigel v. Green, 218 Ill. 227, 75 N. E. 913, the deed described the heir as legatee of Catherine Stipp, late of Lawrence county, Indiana.

Although there is no statutory limitation within which a foreign will must be probated in this state, yet such a will has no effect whatever to convey or effect title to real estate until it is probated.

It follows that, until a foreign will is probated in the county where the real estate involved is located, a purchaser of the land, without notice of the will, may rely upon the presumption that the grantor was intestate and safely purchase from the heirs. The title to the lands can only pass by devise, according to the laws of the state or county where the lands lie, and the probate of a will in one state or county is of no validity as affecting the title to lands in another. McCormick v. Sullivant, 10 Wheat. 192, 6 L. Ed. 300. The law presumes that a person who is proven to be dead left an heir or heirs; but no such presumption obtains as to the existence of a will, and the foreign probate of a will is not notice to the purchaser of lands affected thereby. The probate of a will in one state will not affect a bona fide purchaser of land in another state from an heir and before the probate of the will in the state where the land is located. Van Syckel v. Beam, 110 Mo. 589, 19 S. W. 946; Slayton v. Singleton, 72 Tex. 209, 9 S. W. 876. The case of Chase v. Woodruff, 133 Wis. 555, 113 N. W. 973, 126 Am. St. 972, is analogous. The rule was adopted that there was a presumption of intestacy where a husband seeks to establish title to property as the sole heir of his deceased wife. The same principle has been applied in this state to a deed by a bona fide purchaser from an heir of the deceased owner, which takes precedence over a deed executed by the intestate in his lifetime, but unrecorded. Welch v. Ketchum, 48 Minn. 241, 51 N. W. 113.

Affirmed.