Youngblood, Adm'r of Tuley, v. Vastine, Adm'r of Wright, et al.

JAMES M. YOUNGBLOOD, ADMINISTRATOR OF JOSEPH TULEY, Appellant, v. JOSEPH P. VASTINE, ADMINISTRATOR OF SARAH D. WRIGHT; D. ROBERT BARCLAY, TRUSTEE OF ANN A. MAC-DONALD et al., Respondents.

1. *Conveyances — Recorded deed by heirs will give title as against unrecorded deed of deceased grantor.* — The heirs of a grantor in an unrecorded deed of land, on his death become the apparent owners of the legal title, and a duly recorded conveyance by them of the same estate to an innocent purchaser will carry the title as against the first grantee, in like manner as if made by the ancestor.

### Appeal from St. Louis Circuit Court.

*Garesche,* for appellant.

The heirs had no other title than they inherited, and that was what the ancestor had when he died, which was nothing, because he had conveyed. (Caldwell v. Head, 17 Mo. 561; McCamant v. Patterson, 39 Mo. 110; Hancock v. Beverly's Heirs, 6 B. Monr. 532; Hill v. Meeker, 24 Conn. 214.)

*Ewing & Holliday,* for respondents.

The deed of trust not being recorded when the defendant Barclay purchased the property from the heirs of Mrs. Wright, four years after Mrs. Wright's death, and the deed from the heirs to Barclay having been recorded several months before said deed of trust, by our registry laws the deed to Barclay must prevail. (Tucker v. Harris, 13 Ga. 1, and cases cited; McCulloch's Lessee v. Eudaly, 3 Yerg. 346; Powers v. McFarren, 2 Serg. & R. 44; Kennedy v. Northrup, 15 Ill. 148; dissenting opinion in Hill v. Meeker, 24 Conn. 211; 15 Ill. 148; R. C. 1855, p. 364, § 42; Gen. Stat. 1865, p. 447, § 26.)

BLISS, Judge, delivered the opinion of the court.

Sarah G. Wright, deceased, by herself and her trustee, on the 20th day of July, 1859, executed to E. J. Xaupi, in trust, to secure the payment of a promissory note of same date for $3700, given to Joseph Tuley, then living, a deed of certain real estate,

her separate property, situate on the corner of Pine and Eighth streets, in St. Louis, which deed was not put upon record until the 19th of October, 1866. The said Joseph Tuley and Sarah G. Wright died in 1860 and 1861, and on the first of October, 1865, D. Robert Barclay, as trustee for Mrs. Ann A. Macdonald, and with her funds, purchased said property of the heirs of said Sarah G. Wright, and received a warranty deed of the same, which was recorded April 28, 1866. It appears from the evidence that neither Barclay nor Mrs. Macdonald had any knowledge of the trust deed to Xaupi; that the records were examined before the purchase to see if there were any encumbrances upon the property; that a full consideration was paid for it; that the estate of Mrs. Wright had been settled by the public administrator, and that all debts presented had been paid, but this note was not among them.

This suit was brought by the administrator of Tuley to foreclose his trust deed, and the contest arises in consequence of the failure on the part of Xaupi, to whom it was made, to place it upon record. Had the second deed been executed by Mrs. Wright while living, there would be no question that it would hold against the unrecorded deed. But in some of the reported cases upon the subject it is held that the same preference can not be given to the second deed if made by the heirs of the first grantor. I confess I am not struck with the force of the reasoning upon which the distinction is made, for it is based upon the idea that the second deed is inoperative because nothing descended to the heirs, and hence they had nothing to convey. If that be so, it was because nothing was left in the ancestor that could descend; that his whole estate was divested by the first deed. If his whole estate was so divested, how could a second deed, if made by himself, be operative? Yet it is not disputed that such second deed would convey the estate, notwithstanding the first.

Yet the distinction is made by some of our most respectable courts, and it is apparently recognized by this court. In Hill et al. v. Meeker, 24 Conn. 211, the majority of the court held that the unrecorded deed from the ancestor so divested him of his title that his son and heir " took nothing by inheritance that he could

convey or mortgage to a *bona fide* purchaser who had no knowledge of the deeds." The case is a much harder one than the one at bar, and the decision is based upon "a clear distinction between a purchaser from him (the ancestor) and one from his heir, Arza. In relation to a purchase from Arza, the difficulty is that he never had any title."

The same distinction was made in Hancock v. Beverly's Heirs, in 6 B. Monr., Ky., 531. The judge delivering the opinion acknowledges the question to be a doubtful and difficult one, and in reasoning upon the subject says: "It has always been held that a deed, though never recorded, is good between the parties, and as to all the world, except creditors and innocent purchasers for value. The grantor in such deed can pass no title to his subsequent donee or devisee, and the law will pass none to his heir, because there was none in him, after his conveyance, to be passed, but in favor of a creditor or *bona fide* purchaser for value. Does the conveyance of the heir, or donee or devisee, who, as such, never had title, made to a purchaser for value and without notice, operate to divest the title conveyed by the unrecorded deed, and, bringing it in another line of conveyances, vest it in subsequent purchasers?" This question the court, on the authority of Ralls v. Graham, 4 Monr. 120, answers in the negative.

Our own court, in McCamant v. Patterson, 39 Mo. 110–11, seems to recognize the same doctrine, though, from the peculiarity of the title to the New Madrid grants, the question in its general application could not have arisen in that case.

Other authorities, however, equally respectable, have held that the heir of the grantor in an unrecorded deed can convey a good title to an innocent purchaser for value. The Supreme Court of Pennsylvania, in Powers v. McFarren, 2 Serg. & R. 44, in giving its opinion, remarks that " the purchaser for a valuable consideration, seeing no deed on record, had a right, under the sanction of the recording act, to take for granted that the whole estate had descended." The same question was raised in McCulloch v. Eudaly, 3 Yerg., Tenn., 346, and in sustaining a deed from the heir, the following language is used by the court: "But it is contended that this (the saving to subsequent purchasers) only

applies to cases where the purchase should be made from the same vendor by whom the prior deed was executed. It is true the subsequent purchaser must hold under the same title; but whether he holds under the ancestor or heir, it can make no difference. The estate is thrown upon the heir with all the rights the ancestor enjoyed and subject to all encumbrances he had created on it."

The subject has also been considered in the State of Illinois, in Kennedy v. Northrup, 15 Ill. 148; and after reviewing the authorities, the title from the heir was sustained. " After much reflection," says the judge who delivered the opinion, " I am satisfied that this is the true and proper construction of the statute. It meets the object designed to be accomplished by the law, and is within the reason which gave rise to the enactment. It was the object of the Legislature to make patent the titles to real estate, that purchasers might know what titles they were acquiring. Where a deed is not recorded, the title is apparently still in the grantor, and the law authorizes purchasers who are ignorant of the conveyance to deal with him as the real owner. In case of his death the heir becomes the apparent owner of the legal title, and it is equally important and equally as just that the public may be allowed to deal with him as with the original grantor if living."

There is no substantial difference between the statutes of the different States whose decisions I have quoted and our own. Different language is used, but the same result is aimed at; some expressly declaring unrecorded deeds to be void against subsequent purchasers, while ours negatively does the same thing by saying that no such instrument shall be valid except between the parties thereto, etc.

The discrepancy in the authorities has doubtless arisen in part from the endeavor to reconcile the statute with the subtleties of the old law of tenures, which treats a title as a substantial entity, and almost applies to it the powers of locomotion. The attempt involves the reasoner in contradictions, for in one breath it is said that the title passes by the deed to the grantee and still so remains with the grantor, that in a contingency, it may again

pass from him to another grantee, but if the grantor dies it can not descend like all his other titles, .but goes back to the original grantee, with whom it has always remained.

It would be more rational to say that the law controls the manner in which rights of property are acquired, and that it will not favor any mode of acquirement that shall encourage fraud. Thus purchasers are required to spread upon record the evidence of their ownership; and if others suffer from their neglect, the law will not recognize such ownership. Or, in using the language of the law of tenures, we might perhaps say that in a conveyance the absolute title rests with the grantor and his heirs in abeyance, to vest irrevocably only upon the record of the deed, and that it will vest in the first grantee in condition to receive the grant, who shall so place it upon record.

The Circuit Court held that the defendant's deed from the heirs of Mrs. Wright conveyed the whole estate, whereupon the plaintiff took a nonsuit, and his motion to set the same aside was overruled. In this the court committed no error, and the other judges concurring, the judgment will be affirmed.