## BRADBURY *et al. v.* DAVIS.

(*Supreme Court of Colorado, April Term, 1880.*)

LIMITATION. "Bills for relief on the ground of fraud, must be filed within three years after the discovery, by the aggrieved party, of the facts constituting such fraud, and not afterwards."

A QUIT CLAIM DEED, is as effectual to pass the title to real estate as any other, and the purchaser accepting such deed, without notice of prior rights, will be as effectually protected as if the deed contained full cove-nants of warranty. Unless the contrary appear from the conveyance.

BECK, J. The complaint in this case seeks relief on the ground of fraud. It alleges the formation of a mining partnership in the month of November, 1874, composed of the plaintiff, Davis, and the defendants, Feely and Ellsworth, by the terms of which partnership contract all the partners were to prospect for silver mines, and to locate and develop such as might be discovered, for their joint benefit, each partner to bear an equal proportion of the expenses incurred, and each to own an equal interest in the lodes discovered. It alleges that the Tecumseh lode, on Game ridge, Fremont county, (now Custer county,) was discov-ered by defendant Ellsworth during the existence of the partner-ship engagement, and that it was staked in the names and as the property of all the partners; but that afterwards the defendants, Feely and Ellsworth, conspiring to defraud the plaintiff out of his interest therein, destroyed the location stakes, and then staked and located it in the name of Feely alone. That Feely con-veyed one-fourth of the lode to Ellsworth, and that Ellsworth and Feely, by separate conveyances, thereafter conveyed the en-tire lode to the other defendants. The complaint charges that all the conveyances were made and accepted in fraud of the

rights of the plaintiff; that the purchasers had full knowledge of his rights, and that the pretended conveyances given and accepted were deeds of quit-claim.

The prayer of the complaint is, that the plaintiff be adjudged to be the rightful owner of an undivided one-third interest, share and part in the mine; that the parties holding the legal title to the property be ordered to convey it to him; also, that the parties in control of the mine be required to account for the ore mined and sold; likewise a prayer for further relief. All the defendants except Austin interposed, as a bar to the action, pleas of the statute of limitation.

The statute relied upon (section 1682, General Laws 1877,) provides that "bills for relief on the ground of fraud shall be filed within three years after the discovery, by the aggrieved party, of the facts constituting such fraud, and not afterwards."

Upon the trial the appellants requested the court to give to the jury the following instruction, which was refused: "The court instructs the jury that if they believe from the evidence that Davis discovered the facts constituting the fraud, he (Davis) complains of in this action, to wit, the location of the Tecumseh mine on Game Ridge, in the name of Feely alone; the sale of half thereof to the Bradburys; the sale of one-fourth thereof to Ellsworth, and Ellsworth's sale of one-fourth thereof to Reed, more than three years prior to March 20, 1879, then the claim and action of Davis, plaintiff, is barred by the statute of limitations, and they (jury) must find for the defendant."

The record shows that Davis discovered the alleged fraud of destroying the location stake and the re-staking of the lode in the name of Feely, as early as February, 1875; it discloses the fact that the conveyances to all of the defendants, except the defendant Austin, were made prior to the year 1876. The complaint was filed in the District Court March 20, 1879; the plaintiff admits that Bradbury told him in December, 1874, or January, 1875, that he had an interest or a half interest in the mine, and that Reed informed him in the spring of 1874, of his purchase of an interest therein; also that Ellsworth told him in the fall of 1874, that he and Feely had concluded to keep the mine themselves. Davis then had full knowledge of all the fraudulent acts complained of, and upon which he relies for equitable relief, with the

single exception of the sale to Austin, more than three years prior to the filing of his complaint.

This being the state of the evidence, the instruction referred to was pertinent to the case presented by the pleadings and the testimony; it should have been modified, perhaps, so as to have specifically excluded from its operation the defendant, Austin, as to whom the statute of limitations was not pleaded. The statute relied upon by the appellants clearly applies to cases of this character. Fraud is the substantive cause of action, and the policy of the law is that actions of this nature shall be instituted within three years after the discovery of the fraudulent acts relied upon as the ground of relief, or be forever barred. *Pipe* v. *Smith*, decided at present term; *Sublette* v. *Finney*, 9 Cal., 423; *Carpenter* v. *The City of Oakland*, 30 Cal., 439.

A question arose upon the trial as to the effect of the quit-claim deeds executed by the defendants, Feely and Ellsworth, to the other defendants. Counsel for the appellee contended that a purchaser accepting such a deed is chargeable with notice of all outstanding equities, although the same do not appear of record, and the purchaser had not actual notice thereof. This theory was adopted by the court below in its instructions to the jury, and error has been assigned upon the instructions.

The substance of the third, fourth and fifth instructions, given at the request of the appellee, is that if the jury find that the purchasers accepted quit-claim deeds, such deeds were insufficient to convey the equitable interest of the plaintiff, and his rights under and by virtue of the partnership agreement to an undivided one-third part of the mine did not pass thereby.

These instructions practically informed the jury that it was not necessary that the defendants should have notice of these equitable rights in order to produce such a result, since the form of the conveyances operated as constructive notice of the plaintiff's equities.

We are of opinion that these instructions misconstrue the law of this State, both as to the effect of an ordinary quit-claim deed and upon the subject of notice.

The form and effect of deeds, as well as what shall be deemed to constitute notice of the execution thereof, are matters which may be, and frequently are, regulated by statute. In such case,

2

to ascertain the effect of a particular conveyance involves an interpretation of the statute under which it was executed, rather than an inquiry what rights would pass by such a deed at common law or by the statutes of uses.

The provisions of our statute relating to the form, force and effect of instruments for the conveyance of real estate were largely transcribed and adopted from the statutes of Illinois. Those statutes adopted a different policy from that which anciently prevailed in respect to the distinctions between the different forms of conveyance, and made the effect of a deed to depend rather upon the intentions of the parties, than upon the form of the deed. They also required all conveyances of real estate to be recorded in the county in which the land lay, and declared them void, if not so recorded, as against subsequent purchasers and encumbrances, without notice.

A junior deed, if first recorded, has priority over a deed of older date subsequently recorded, unless the grantee in the later conveyance had notice of the prior unrecorded deed. The same provisions substantially were incorporated into our own statute.

The Supreme Court of Illinois, in construing these statutory provisions, has decided that a quit-claim deed is as effectual to pass the title to real estate as any other, and that the purchaser accepting such deed, without notice of prior rights, will be as fully protected as if his deed contained full covenants of warranty, except where it appears from the conveyance itself that it was not the intention of the vender to convey the land in controversy. *McConnell* v. *Reed*, 4 Scam., 117; *Butterfield* v. *Smith*, 11 Ill., 485; *Brady* v. *Spark*, 27 Ill., 482; *Morgan* v. *Clayton*, 61 Ill., 35.

These decisions are expressive of the plain import of these sections of our statute. The rule of construction, therefore, applies, that in adopting substantially the statute of another State the Legislature is presumed to have intended that such statute shall receive the same construction given it by the courts of the State from which it was adopted.

This being our view of the construction to be given the statute, it becomes unnecessary to review the other line of authorities cited concerning the effects to be accorded to such instruments of conveyance. They appear to be based on dissimilar statutory provisions in so far as they are variant from the construction

here adopted; consequently such decisions cannot aid in the interpretation of our statute.

It is unnecessary to consider the other errors assigned, save to observe that the form of the decree is objectionable in granting legal relief instead of the equitable relief prayed for in the complaint.

For the errors mentioned the judgment must be reversed and the case remanded.                                            *Reversed.*