[No. 6375.]

HALLETT v. ALEXANDER.

1. **Appeals—Freehold**—A claim asserted against lands, by mortgage, or a lien for taxes discharged, in no way involves the freehold. No appeal lies from a judgment rejecting such claim. —(41)

2. **Conveyances—Unrecorded—Effect**—An unrecorded conveyance of lands does not take effect as against an execution creditor of the grantor, without notice. Purchaser of lands under execution against the heir, is protected against an unrecorded conveyance of the ancestor, in whom the title stands of record. —(41-44)

3. **Statute—Adopted From Another State—Construction**—In adopting a statute substantially identical with that of another state, the legislature are presumed to adopt with it the construction previously announced by the courts of such other state. —(50)

4.  Estoppel—By Conduct—One who appears to and opposes a petition of an administrator to sell particular land as pertaining to the estate of the decedent, basing his opposition upon the ground that such lands are no part of the estate, but belong to another, and upon this ground prevents the allowance of the petition, will not be heard to afterwards assert a lien upon such land as a creditor of the decedent, even though he was in fact such creditor and, by the timely exhibition of his claim, might have subjected the entire estate of the deceased to the payment thereof.—(51)

5.  Tenant in Common—Lien for Taxes Discharged—Tenant in common of lands, may, under the statute, pay the tax upon his share thereof, though the tax is assessed upon the whole estate; and he may redeem his interest from a previous tax sale of the whole.—(52, 53)

He is under no necessity to discharge the tax upon the interest of his co-tenant, and will not be allowed a lien thereon for such payment made without request of the co-tenant.—(52)

*Error to Denver District Court*—Hon. CARLETON M. BLISS, Judge.

Mr. CHARLES W. WATERMAN and Mr. W. C. KINGSLEY for plaintiff in error.

Mr. WILLIAM YOUNG for defendant in error.

Mr. JUSTICE WHITE delivered the opinion of the court:

September 4, 1906, Johanna Alexander brought suit in the court below to partition certain lots in the city of Denver, claiming that she was the owner in fee of an undivided one-half interest in the premises, by virtue of a sheriff's deed made to and held by her, purporting to convey the interest of John J. Reithman therein. To this action Moses Hallett and Marie G. Wagner were made parties defendant, the allegation being that Mrs. Wagner owned in fee an undivided one-half interest, subject to a mortgage held by Hallett. The pleadings present, and the proof shows, that one Magdalena Reithman died intestate January 17, 1905, leaving as her sole heirs

at law her husband, John J. Reithman, and certain children, one of whom was her daughter, Marie G. Wagner; that some time prior thereto, Mrs. Reithman had become the owner of the lots in question, and at the time of her death the recorded title thereto was in her; that at the time her husband, John J. Reithman, was a judgment debtor of Johanna Alexander to the amount of over $26,000.00. March 23, 1905, Mrs. Alexander caused an execution to be issued upon the judgment and a levy thereunder made upon John J. Reithman's interest in and to the lots in question. April 17, 1905, Reithman's interest, if any, in the property, was sold under the execution to Mrs. Alexander, and thereafter, in due time, she received a sheriff's deed therefor, which was duly recorded. August 17, 1905, a quit-claim deed, bearing date December 16, 1904, from Magdalena Reithman to Marie G. Wagner, in consideration of $1.00, purporting to convey the property in question, was filed for record, together with a mortgage deed bearing date March 16, 1905, from Marie G. Wagner to Moses Hallett, conveying the same property, to secure the payment to Hallett of Mrs. Wagner's note in the sum of $3,422.00. At the time of the levy of the execution and the sale thereunder, Mrs. Alexander had no notice or knowledge of the deed to Mrs. Wagner or the mortgage to Judge Hallett, nor did she acquire such knowledge, either actual or constructive, until the filing of the last-named instruments.

On and prior to December 6, 1904, Mrs. Reithman was indebted to Judge Hallett upon three promissory notes for money loaned in the aggregate sum of $1,900.00, and, being in poor health, conveyed the lots to Mrs. Wagner "for the purpose of having her secure the said indebtedness" by a mortgage upon the lots to Judge Hallett. March 6, 1905, Mrs. Wagner received from Judge Hallett $1,100.00, for the

purpose of paying the general taxes on said lots for the year 1903, and redeeming the premises from certain tax sales and assessments for public improvements, and thereupon executed and delivered to Judge Hallett her promissory note for the sum of $3,422.00, being the amount of such advancements and the indebtedness of Mrs. Reithman. At the same time, to secure the payment thereof, she executed and delivered the mortgage deed hereinbefore mentioned. In November, 1906, Judge Hallett redeemed the property from a sale for the taxes of 1904, and paid the taxes thereon for 1905, the two sums aggregating about $264.00.

The evidence further shows that administration was had upon the estate of Magdalena Reithman; that June 19, 1905, the administrator petitioned the county court for an order to sell the lots in question to pay the debts of the deceased; that some time subsequent to August 21, 1905, plaintiff in error appeared, in the administration proceedings, and filed an answer to the petition to sell the lots, specifically alleging that the lots were not the property of Magdalena Reithman at the time of her death, and were no part of her estate, but were the property of Marie G. Wagner, subject to the mortgage of Hallett, and thereupon secured the annulment of the order to show cause. The lots were vacant and unimproved, and not in the actual possession of any one. They were assessed as the property of Magdalena Reithman for taxation to and including the year 1905.

Trial was had, and resulted in a judgment in favor of Mrs. Alexander. The premises, not being subject to partition without loss, were thereafter sold, under the direction of the court, and the net proceeds ordered distributed, one-half to Mrs. Alexander, and the other half to Judge Hallett as the mortgagee of the interest of Mrs. Wagner. The sum decreed to

Judge Hallett, being insufficient to liquidate the indebtedness to him, he appealed to this court.

1.    Mrs. Alexander has interposed a motion to dismiss the appeal, because the judgment rendered was not of that class from which an appeal will lie. The motion must be sustained.    No money judgment was rendered, nor does the judgment relate to a franchise or freehold.—Sec. 388, Mills' Ann. Code. Whether Judge Hallett has a lien, by virtue of his mortgage, or the moneys advanced, or paid for taxes, superior to the interest in the premises claimed by Mrs. Alexander, are the sole questions for determination, and in no sense involve a franchise or·freehold.—*Murto v. King,* 28 Colo. 357, 359; *Scheeren v. Stramann,* 24 Colo. 111; *Cravens v. Lee,* Id. 225.

This court, therefore, has no jurisdiction to entertain the appeal; but, as Mrs. Alexander has entered her appearance and filed briefs herein, within the time a writ of error might have been sued out, and *scire facias* served, the cause will be entered as pending upon error, by virtue of section 388a, Mills' Ann. Code, and we will proceed to determine the controversy.

2.    One contention of plaintiff in error is, that Mrs. Alexander acquired no interest in the premises, superior to the lien created by the Hallett mortgage, because Magdalena Reithman had previously conveyed all her title in the lots to Marie G. Wagner, and no interest therein descended to John J. Reithman, notwithstanding such deed to Wagner and mortgage to Hallett were not recorded until long after the death of Mrs. Reithman, and subsequent to the levy of the execution and sale thereunder upon which the sheriff's deed was based.

By virtue of section 694, Rev. Stats. (sec. 446, Mills' Ann. Stats.), deeds, conveyances or agreements in writing affecting title to real estate, or any

interest therein, must be recorded in the office of the recorder, wherein such real estate is situated, before they can "take effect as to any subsequent *bona fide* purchasers and incumbrancers by mortgage, judgment or otherwise, not having notice thereof."

By numerous decisions of this court, it is established that one who takes property, voluntarily or by judicial procedure, in payment of a pre-existing debt, is a purchaser for a valuable consideration; and that an unrecorded deed does not take effect as against an execution creditor, without notice.—*Knox v. McFarran,* 4 Colo. 586, 596; *McMurtrie v. Riddell,* 9 Colo. 497; *Jerome v. Carbonate N. Bank, etc.,* 22 Colo. 37, 40; *West: Chem. Mfg. Co. v. McCaffrey,* 47 Colo. 297.

Such is conceded to be the law, but it is argued that the rule does not apply where the judgment creditor, as in the case at bar, claims the benefit of the provisions of the statute under a levy upon the alleged interest of an heir, but who, in fact, because of an unrecorded deed of his ancestor, had no interest in the property levied upon.

As the heir, taking by descent, is not within the class excepted by the statute from the effect of an unrecorded deed or conveyance, it necessarily follows that such unrecorded instrument of the ancestor binds the heir to the same extent as it would if recorded before the death of the maker thereof. This is necessarily true, because, by the common law, the priority of liens upon real estate is measured by the date of their acquisition, the first in order of time standing first in order of rank. It is equally true that a deed duly executed and delivered is sufficient as between the parties to it to convey the whole title of the grantor to the grantee, though the instrument be not recorded. So, in the case at bar, after the execution and delivery of the Wagner deed,

Mrs. Reithman actually retained no interest in the premises which she could, by right, convey to any person; yet it is firmly established that, if she had thereafter made a deed of conveyance of the premises in controversy to a *bona fide* purchaser, without notice of the Wagner deed, or, if a like judgment creditor had, by judicial procedure, received a deed for her interest therein, such person would have taken an absolute fee. The reason of the rule is, that by virtue of the statute, the unrecorded deed, under such circumstances, has no force or effect. As to *bona fide* purchasers or incumbrancers without notice, an unrecorded deed, though binding upon the grantor, his heirs and devisees, is a nullity. "As to them, the person who appears of record to be the owner, is to be taken as the true and actual owner, and his apparent seisin is not divested or affected by any unknown and unrecorded deed that he may have made."—*Earle v. Fiske*, 103 Mass. 491, 493. The rights acquired by a *bona fide* purchaser of real estate, without notice of an unrecorded deed, are not measured by the actual interest of the seller in the land, but rather by his apparent interest.—*Western Chem. Mfg. Co. v. McCaffrey, supra.*

But it is asserted that the title of an heir to property standing upon the record in the name of his ancestor is not apparent.

If the statute of descent required registration to be made, either of the fact of death or descent, before the title of the ancestor vested in the heir, the argument would have force. The law, however, makes no such requirement. On the contrary, it expressly declares that the title of real estate, of one dying intestate, vests immediately in the heir upon the death of the ancestor, subject, of course, under certain circumstances, to be divested for the pay-

ment of the debts of the deceased.—Sec. 7040, Rev. Stats.

When Mrs. Alexander found the record title in Magdalena Reithman, and knowing that John J. Reithman was the latter's surviving husband, which knowledge she might acquire in any way, and knowing the law of descent, which she is conclusively presumed to know, she knew from the record that an undivided one-half interest, at least, in the premises, was vested in John J. Reithman.

In giving the principal reasons assigned, supporting the rule that, where the grantor of real estate dies, and the deed is not recorded, a subsequent purchaser from the heir for a valuable consideration, and without notice of the unrecorded deed, is protected to the same extent as though he had purchased from the ancestor under similar circumstances, the author of Wade on the Law of Notice, section 218, says:

"The heir stands in the shoes of his ancestor. The title to the real estate descends to him immediately on the death of the ancestor. When the purchaser ascertains who is the sole heir, he would ordinarily be willing to treat with him, much as he would have treated with the ancestor in his lifetime. It is true that the heir could not hold the property as against his ancestor's grantee, whose deed was unregistered. In this respect he is in neither a better nor a worse condition than his ancestor while living. If the real estate of which one dies apparently seized is to remain forever subject to unrecorded instruments affecting the title, the benefit to be derived from the registry laws is utterly lost as soon as the title is cast by descent. If one hold a deed to land which is unregistered at the death of his grantor, unless subsequent purchasers from the heir are protected the same as subsequent purchasers from the

ancestor, it need only be registered, in order to protect the grantee's title. It is said that it was never intended by any of the recording acts that the death of a grantor should be allowed to create a break in the chain of title, as it appeared of record, and protect the grantee whose deed was unregistered against subsequent purchasers without notice. The only question is, whether a contrary intention is sufficiently expressed in the statute."

In *Powers v. McFarren*, 2 Serg. R. 43, 44, it is said that "The purchaser for a valuable consideration, seeing no deed on record (from the ancestor), had a right, under the sanction of the recording act, to take for granted that the whole estate had descended" (to the heir).

In *Kennedy v. Northup*, 15 Ill. 148, it is said: "Where a deed is not recorded, the title is apparently still in the grantor, and the law authorizes purchasers who are ignorant of the conveyances to deal with him as the real owner. In case of his death, the heir becomes the apparent owner of the legal title, and it is equally important and equally as just that the public may be allowed to deal with him as with the original grantor, if living."

It is claimed that the contest here is not between claimants from a common source of title, and that the statute operates, and is intended to operate, only in such cases. We are persuaded that the statute applies only as between claimants from a common source of title, but cannot agree with counsel that this case is not of that character. On the contrary, the common source of title is Magdalena Reithman. Mrs. Wagner's alleged title came from her by virtue of the deed; and Judge Hallett's right to the interest claimed by Mrs. Alexander must find support, if at all, in the same source. John J. Reithman's apparent title likewise came from Mrs. Reithman,

not by conveyance, it is true, but by operation of law, and as the record stood, immediately preceding the levy of the execution, he possessed apparently the only title as to an undivided one-half interest in and to the premises. The unrecorded deed is, by the statute, made non-effective as against a *bona fide* purchaser, who purchases without notice thereof, from any one who in reality would possess the absolute title if it were not for the unrecorded instrument. Mrs. Alexander is not an heir of Magdalena or John J. Reithman, and does not claim by inheritance from either. She acquired and holds her interest as a *bona fide* purchaser, without notice of the Wagner deed or the Hallett mortgage, from John J. Reithman, who appeared to have, and would have had if it were not for the unrecorded deed, the real title. The evident purpose of the recording statute is, to provide an effectual remedy against the loss accruing to subsequent purchasers of real estate arising from the existence of secret or concealed conveyances thereof unknown to the subsequent purchaser. The remedy is made effectual by requiring every deed to be recorded before it can be of any effect as against such purchasers. If such be the purpose of the act, it is certain that all those who are liable to suffer by reason of concealed conveyances are intended to be protected, and, therefore, come within its provisions. The liability to loss is not confined to the immediate purchasers from the same grantor. It may extend to remote purchasers. To illustrate: Suppose A., invested with absolute title, conveys to B., who fails to record, and subsequently to C., who records, the latter having knowledge of the prior conveyance to B. As between B. and C., the latter takes no title. But suppose C. should convey to D., a *bona fide* purchaser without notice of the prior unrecorded deed to B.; D records his conveyance, and

would unquestionably take absolute title as it apparently existed in A. So, in the case at bar; Magdalena Reithman, invested with absolute title, conveyed to Wagner, who failed to record; Magdalena Reithman dying intestate, her absolute title apparently vested in her heirs, who are not protected because not coming within the exceptions of the statute; John J. Reithman, one of those heirs, nevertheless, conveyed an undivided one-half interest in the premises to Alexander, who comes within the statutory exceptions. Alexander is certainly a *bona fide* purchaser of the real estate from one apparently having the right to convey, and in whom, were it not for the unrecorded deed, the title to an undivided one-half interest of the estate would have vested. Under such circumstances, Alexander clearly comes within the words and the spirit of the act, and the unrecorded deed as to her has no effect. If the unrecorded deed to Wagner be adjudged paramount to the title acquired by the levy of the execution and sale thereunder, then the statute declaring that unrecorded deeds shall have no effect as to subsequent *bona fide* purchasers without notice, is nullified, and an instrument which the statute declares of no effect, is made effective.

Such appears to be the law announced in the best considered cases, and established by the weight of authority. In 24 Amer. & Eng. Encyc. of Law; p. 121, we find the following: "A purchaser from the heir of a grantor in a prior unrecorded conveyance is as much entitled to protection as if he had purchased directly from such grantor. A contrary doctrine was upheld in a few earlier cases, but these decisions were based on a clear misconception of the purpose of the recording acts." And the author of Wade on the Law of Notice, sec. 222, after reviewing the conflicting cases, says: "The weight of au-

thority seems to be in favor of extending the same protection to *bona fide* purchasers from the heirs of a deceased grantor, where the prior deed is unregistered, as is afforded to subsequent purchasers from the grantor himself. This view seems also to be supported by the better reason. Following the record as a guide, the title seems to be in the heir at the moment of the ancestor's death. It is true that, as against his ancestor's grantee, he has no title at all; but the same could be said with equal truth of the grantor himself, where the subsequent deed is from him.''

In *Whitmore v. Bean,* 6 N. H. 47, 49, it is said: ''An unrecorded deed of land is valid against the grantor and against his heir. But if the grantor, or his heir, afterwards, for a valuable consideration, convey the land to another purchaser, who has no notice of the unrecorded deed, the last conveyance will prevail against the first.''

In *Bowen v. Prout,* 52 Ill. 354, it is held that, a subsequent purchaser for a valuable consideration from an heir, without notice of a prior unrecorded conveyance from the ancestor, will be protected in his title as against such prior conveyance.

In *Memphis Land & Timber Co. v. Ford,* 58 Fed. 452, 455, after stating that ''The argument is, that the purchaser from the heir, or from the receiver of the estate of a deceased grantor, takes only the title or interest of which the deceased died seized,'' it is said: ''This argument is more specious than sound. Many years ago, it met the approval of the supreme court of Kentucky in *Ralls v. Graham,* 4 T. B. Mon. 120, and *Hancock v. Beverly,* 6 B. Mon. 531, and was adopted by a divided court in *Hill v. Meeker,* 24 Conn. 211; but the opinion of the dissenting judge in the case last mentioned has since met with general approval. The argument

may be used with equal force to entirely annul the statute, and to show that the purchaser from the same grantor takes nothing by a subsequent deed, for it may be said that such a grantor can convey only the title or interest he has, and, as he has none after making his first deed, he can convey nothing, and the subsequent purchaser can take nothing. This argument loses sight of the policy and purpose of the registry statutes. It is the purpose of those statutes to make the title that appears of record—the apparent title—superior, in the hands of an innocent purchaser for value, to the real title that is not of record. The grantor who has conveyed away his land by an unrecorded deed, it is true, has no title or interest remaining in himself; and yet, his deed to an innocent purchaser for value avoids, by virtue of the registry statute, the prior conveyance, and vests the title in the subsequent purchaser. * * * To compel every purchaser from an estate to take notice of unrecorded deeds and instruments, and the private and secret transactions of the deceased in the lands which he appears by the records to own when he dies, would greatly depreciate the value of every estate in the land, and benefit none but the negligent and careless. The benefits of the statute are not, by its terms, limited to a subsequent purchaser from the same grantor; and such a limitation would, in our opinion, deprive it of much of the efficacy intended to be given to it by the legislature. Undoubtedly, the term 'subsequent purchaser;' in this statute, does not include a purchaser from an apparent stranger to the title of the grantor in the unrecorded deed; but it does include, not only the purchaser from the grantor himself, but every subsequent purchaser from one who appears from the records to be the owner of, or to be authorized to convey, the title and interest that the grantor had when he made the unrecorded deed. This

view is sustained in well-reasoned opinions and by the weight of authority."—*Youngblood v. Vastine,* 46 Mo. 239, 242, cited, with approval, in the last named case as one of the well-reasoned opinions supporting the doctrine there announced, reviews many of the cases, overrules, so far as it announces a contrary doctrine, *McCamant v. Patterson,* 39 Mo. 100, 110, cited by plaintiff in error, and expressly holds, that the heirs of a grantor in an unrecorded deed of land, at his death become the apparent owners of the legal title, and a duly recorded conveyance by them of the same estate to an innocent purchaser, will carry the title as against the first grantee in like manner as if made by the ancestor. To the same effect are *Burns v. Berry,* 42 Mich. 176, 179; *Lyon v. Gleason,* 40 Minn. 434, 435, and many other well-reasoned cases.

Moreover, the statutes of Illinois, construed and applied in *Kennedy v. Northup, supra,* are practically identical with our own recording act, and the conclusions arrived at in that case, which is in conformity with the views here expressed, were upon a review and criticism not only of the cases supporting the doctrine there adopted, but likewise those of Kentucky announcing the contrary rule. In adopting substantially the Illinois statute, the legislature of this state is presumed to have intended that such statute shall, by the courts of this state, receive the same construction given it by the courts of that state previous to its adoption in this.—*Bradbury v. Davis,* 5 Colo. 265, 269; *Houlahan v. Finance Con. M. Co.,* 34 Colo. 365, 368; *City Council v. Hanley,* 19 Col. App. 390, 392.

3. It is further contended, that plaintiff in error, as a creditor of Mrs. Reithman, should be reimbursed out of the proceeds of the sale of the real estate of which she died apparently seized, to the extent, at

least, of his claim against her estate. Mrs. Reith-
man, at the time of the execution and delivery of the
Wagner deed, and likewise at the time of her death,
was indebted to Judge Hallett, and if the latter had
resorted to the procedure provided by law for that
purpose, he could unquestionably have subjected her
entire estate, if necessary, to the payment of his debt.
This he failed to do, but, on the contrary, appeared
in the administration proceedings on her estate and
prevented the proposed sale of these particular lots
for the purpose of paying her debts. His claim
against the estate was unsecured, and had no prefer-
ence over other unsecured claims.

. Moreover, Judge Hallett, having prevented a
sale of the property by the administrator for the pur-
pose of paying all the debts of the deceased, cannot,
after that estate is fully administered upon, success-
fully maintain that he is, either legally or equitably,
entitled to have a lien for such debt impressed upon
the moiety of the estate acquired by a *bona fide* pur-
chaser without notice.

4. Another contention is, that as Marie G.
Wagner, March 6, 1905, redeemed the lots in question
from tax sales, with money advanced by plaintiff in
error upon her request, and for that specific purpose,
the payments inured to the benefit of the entire estate,
and Judge Hallett should be reimbursed to that ex-
tent. The contention is not sound. Whatever in re-
lation thereto may be the rights and equities as be-
tween Mrs. Wagner and Judge Hallett on the one
side, and John J. Reithman on the other, it must be
remembered that Mrs. Alexander acquired John J.
Reithman's interest in the premises as it appeared
on March 23, 1905, the date of the levy of her execu-
tion.

5. Plaintiff in error redeemed the lots from a
tax sale for the taxes of 1904, and paid the taxes on

the entire property for the year 1905. These expenditures were made after Mrs. Alexander acquired title of an undivided one-half interest in the premises, and subsequent to the institution of this suit. As Wagner and Alexander were at that time owners of a common estate, each holding an undivided one-half interest therein, with the estate of the former subject to the Hallett mortgage, it is argued that Judge Hallett is entitled to be reimbursed to the extent of one-half of such expenditures. The taxes were assessed upon the property as an entirety, and the sale was so made, and not upon, or for an undivided interest. If it were not for certain statutory provisions, Judge Hallett would doubtless be entitled to reimbursement as claimed. It seems, however, that by secs. 3872, 3926u, 3926v and 3926w, Mills' Ann. Stats., any person who has or claims an interest in, or a lien upon any undivided estate, or interest in any piece of land assessed or sold for taxes, though assessed or sold as an entirety, may, nevertheless, make payment of taxes on, or redeem such undivided estate or interest by paying into the treasury his proportionate part of the amount of taxes due, or his proportionate part of the sum required to redeem the whole. Under these statutory provisions, Judge Hallett was not under compulsion to pay the taxes or redeem the entire property from the sale for the nonpayment thereof, in order to protect his own interest. The payment of the taxes and the redemption from the sale thereof, as to the interest of Mrs. Alexander, were voluntary acts upon his part. The doctrine contended for by plaintiff in error is not applicable. It only applies where there is an apparent necessity to make payments in order to protect one's own interest. The apparent necessity did not exist in this case—27 Amer. & Eng. Encyc. of Law, p. 750. Neither was the payment made upon request, nor was there a sub-

sequent promise to repay. Nor do the facts of the case bring it within the rule sometimes applied, that where expenditures are made in good faith under a mistaken view of one's rights, recoupment will be allowed to the extent that such payments benefit another primarily obligated to pay. The facts were undisputed and the law determines the rights of the parties. *Mitchell v. Danielson,* 38 Colo. 63, 64, is where one Hallack, holding a tax deed upon real estate, conveyed the premises to Lynch, who conveyed to Danielson, which deeds were duly recorded. Thereafter Hallack made a deed purporting to convey the same premises to Lambert, and the latter thereupon paid the taxes assessed upon said premises, and it is held that at the time Lambert paid such taxes, Danielson was the owner in fee, and in possession of the lot; that Lambert had no interest whatever therein and in making the payment was not acting at the request of Danielson, and, therefore, neither he nor his assignee could recover. This seems to be particularly applicable to the facts of this case. At the time plaintiff in error made the payments herein, the title to an undivided half interest in the premises had fully vested in Mrs. Alexander. A suit was then pending to segregate and set apart that particular interest. Mrs. Alexander made no request that such payments be made, nor did she subsequently promise to repay the same. Having ample power, under the law, to protect his own rights in the premises without going further, plaintiff in error cannot be permitted to impose an obligation, upon defendant in error, by his voluntary act in making the payments that primarily rested upon the latter. We are of the opinion that the judgment of the trial court is right, and it is, therefore, affirmed.    Decision *en banc.    Affirmed.*

Mr. JUSTICE GABBERT dissenting.

Mr. JUSTICE GARRIGUES not participating.

Mr. JUSTICE GABBERT, dissenting:

The two important questions presented are: (1) Did Mrs. Alexander acquire an interest in the premises superior to the lien of Judge Hallett's mortgage?—and (2), If she did, should Judge Hallett be reimbursed out of the proceeds of the sale of the property for the moneys which he advanced to discharge taxes and tax sales against it?

By the majority opinion it is determined that by virtue of the provisions of sec. 446, 1 Mills' Stats. (sec. 694, Rev. Stats.), Mrs. Alexander obtained title to an undivided one-half interest in the property in controversy unincumbered by the Hallett mortgage, because neither the deed from Mrs. Reithman to Mrs. Wagner, nor the mortgage of the latter to Judge Hallett, were of record at the time Mrs. Alexander levied her execution, she having at that time no knowledge of their existence.

The general propositions of law announced in reaching this conclusion, and in discussing our recording statute, are correct, but they are not applicable to the facts of this case. The statute upon which the rights of Mrs. Alexander are predicated and those of Judge Hallett denied, was intended to protect innocent parties, and not as an instrument to deprive others of rights except in those instances where the party invoking its provisions was clearly of the class entitled to invoke the protection which it is intended to afford.

It has been frequently decided by this court that an unrecorded deed does not operate to defeat the right of a judgment creditor of the grantor who has secured a lien unless he had notice of the existence of such deed at the time his lien attached; but in none of these cases was the applicability of the statute considered or presented where the judgment creditor, as in the case at bar, claimed the benefit of its provisions

under a levy on the alleged or apparent interest of an heir who, as a matter of fact, because of an unrecorded deed of his ancestor, had no interest in the property levied upon. This presents an entirely new question, in this jurisdiction, and must be determined from the facts of the case in which it is presented.

An unrecorded deed binds the grantor, his heirs and devisees to the same extent, so far as they are concerned, as it would do if recorded—*Ralls v. Graham,* 4 Monroe (Ky.) 120; consequently, John J. Reithman as the heir of his deceased wife took no interest whatever in the property in controversy, for the reason that prior to his death she had conveyed it to Mrs. Wagner; but, notwithstanding this conclusion, the question with which we are confronted, under our recording statute is, Can the creditor of an heir of a deceased person in whose name the title to real estate stands at the time of his death, as disclosed by the records in the office of the recorder of deeds, acquire by levy and sale under execution on a judgment against the heir of deceased a lien superior to one to whom the property has been conveyed by deceased by an unrecorded deed, the creditor not having actual notice of such conveyance, and the levy having been made in less than seventy days after the death of the ancestor of the heir? This court has determined, as a general proposition that a judgment creditor who purchases property at sheriff's sale under his own judgment, and who pays no new consideration, but whose bid is merely credited upon the execution, is a *bona fide* purchaser within the meaning of the recording statute under consideration. In each case, however, in which this declaration has been made, the judgment creditor was the creditor of the person who had executed and delivered the unrecorded conveyance; but this proposition, in the circumstances of this case, does not in any manner af-

fect or control the rights of a judgment creditor who seeks to enforce his judgment against an heir who, as a matter of fact, has no interest whatever in the property levied upon. By the common law the priority of liens upon real estate was governed by the date of their acquisition, the first in order of time standing first in order of rank.—*Westervelt v. Voorhis,* 42 N. J. Eq. 179. The statute under consideration has changed the common law in this respect, but it should not be given a construction beyond its plain scope, and should be limited to the purposes for which it was enacted. Its object was to prevent the creation of secret liens and trusts, and to protect subsequent purchasers and incumbrancers against previous unrecorded conveyances by, in effect, providing that such purchasers without notice of prior conveyances could rely upon the title to real estate as disclosed by the records in the office of the recorder of deeds.— *Earle v. Fiske,* 103 Mass. 491; *Voorhis v. Westervelt,* 43 N. J. Eq. 642.

But its provisions must be limited to those who have the right to rely upon such records. The statute does not deal with titles by descent or devise. It only requires that deeds, conveyances and agreements in writing affecting the title to real estate shall be placed of record in order that the title thus acquired shall be protected as against others subsequently acquiring an interest in the same premises. So that its manifest purpose is, that the apparent owner of record shall be deemed the true owner so far as subsequent purchasers without notice are concerned, notwithstanding any unrecorded previous alienation, provided such purchasers have the right to invoke its protection. A title which results from means other than those designated by the statute, and not required thereby to be disclosed in the office of the recorder of deeds, is not a title which can be

said to be apparent from such records, and is, therefore, not within the operation of the recording act. The title of an heir to property standing in the name of his ancestor is not apparent from the records required by the act, unless, from lapse of time, or the adjudication of the affairs of the estate of the deceased from whom title descends, it becomes so, or the grantor of the heir, after the exercise of due diligence, is justified in treating it as such. An heir or a devisee of a deceased person in whose name the title to real estate may appear as evidenced by the records in the recorder's office is not, from this fact alone, an apparent owner of such real estate. His interest therein depends upon a variety of circumstances. He takes title to the real estate of his ancestor either by devise or descent, subject to the payment of the debts of the former. If the ancestor dies testate, the ownership of the devisee depends upon the provisions of the will. If there is an outstanding unrecorded deed of the ancestor, the grantee will hold the real estate so conveyed as against the heir, whether he asserts a right thereto by descent or devise.

Mrs. Alexander did not learn of Mrs. Reithman's death from the records in the recorder's office. That information was obtained *aliunde*. Mrs. Alexander had no right to assume in the circumstances of this case, merely because the real estate in question stood of record in the name of Mrs. Reithman at the time of her death, that John J. Reithman, as the husband of deceased, became the owner of an undivided one-half interest therein as the heir of deceased, when at the time she made her levy the affairs of the estate were not adjusted and could not have been, by administration proceedings, and but a short time had elapsed since Mrs. Reithman's death. Suppose, as a fact, Mrs. Reithman had not conveyed

this property to Mrs. Wagner; that the latter had not mortgaged it to Judge Hallett, and that Mrs. Reithman was, in fact, the owner when she died. One-half would have descended to Reithman, subject to the payment of his wife's debts. If these debts absorbed the property, Reithman would take nothing; or if Mrs. Reithman had died testate, and had devised this property to some one other than her husband, he would have taken nothing. But as she had conveyed it to her daughter, he acquired no interest therein by descent, so what his interest in the real estate might be depended entirely upon not what the records in the office of the recorder disclosed, but upon facts *aliunde;* consequently, Mrs. Alexander was not misled by anything she learned from the office of the recorder of deeds; nor did she act upon information which was there disclosed which she had a right to rely upon, but assumed that because the records in the office of the recorder showed Mrs. Reithman to be the owner of real estate at the time of her death, that, therefore, *ipso facto* she had the right to further assume that her judgment debtor acquired an undivided one-half interest therein by descent, when his interest depended altogether upon other facts and circumstances which the statute does not require shall appear of record in the office of the recorder, and which could not appear there, but which Mrs. Alexander could have learned had she sought for information, as she was bound to do, at the proper source. Had she made inquiry she would have ascertained that her judgment debtor had no interest in the property whatever, because it had already been conveyed by Mrs. Reithman to her daughter. The statute does not protect those who have notice of an unrecorded conveyance, but a party cannot blindly assume that facts do not exist which it is his duty to make inquiry about. When Mrs. Alexander made her

levy, she was bound to take notice that the interest of her judgment debtor in the subject of the levy was entirely contingent, and it was, therefore, her duty to ascertain what that interest was. Whatever puts a party on inquiry amounts to notice, provided that the inquiry becomes a duty, and would lead to the knowledge of a requisite fact by the exercise of ordinary diligence and understanding.—*Maul v. Rider,* 59 Pa. St. 167. Hence, in the circumstances of this case, Mrs. Alexander acquired no interest in the subject-matter of controversy by virtue of her execution sale. In reaching this conclusion, however, it must be understood that it is limited strictly to the facts of this case, and that what has been said is limited accordingly. A state of facts might be presented where the grantee of an unrecorded deed would not be permitted to hold title to real estate as against the grantee of the heir of a deceased person, either by voluntary conveyance or proceedings in *invito.*

Cases decided by this court are cited by counsel for Mrs. Alexander wherein it was held that an execution creditor who purchased at the sale, the amount of his bid being endorsed upon his execution, is a purchaser for value, and acquired rights superior to those of a grantee in an outstanding deed by the execution debtor of which the execution creditor did not have notice. That proposition is unquestionably sound as applied to the facts of those cases, namely, *Jerome v. Carbonate National Bank,* 22 Colo. 37, and *McMurtrie v. Riddell,* 9 Colo. 497; but those in the case at bar render it inapplicable. From an examination of these cases it will be found that the records in the office of the county clerk and recorder disclosed of themselves that the judgment debtor was the owner of the premises purchased at the execution sale, and the facts were such that the judgment creditor was not required to look elsewhere; and hence,

it was held that by virtue of our recording statute the unrecorded deeds did not take effect as against the judgment creditor who had no notice of their existence. These cases would be applicable if Mrs. Alexander had obtained a judgment against Mrs. Reithman and during her lifetime had levied upon the lots she had conveyed to Mrs. Wagner without notice of such conveyance; but they have no application to the case at bar, for the reason that Mrs. Alexander was not justified in assuming that Reithman owned an interest in the lots because the record showed that his wife owned them at the time of her death. Their ownership thereafter depended upon extraneous facts which Mrs. Alexander could have ascertained, and which it was her duty under the circumstances to ascertain, and which were of such a nature, when she learned them, that she would not have been an innocent purchaser. An analysis of the cases cited in the majority opinion and by counsel for Mrs. Alexander, based upon recording statutes similar to our own, will disclose that the facts are so radically different from the case at bar that the conclusions announced in these cases could not have been otherwise.

*The Memphis Land & Timber Co. v. Ford*, 58 Fed. 452, involved a construction of the recording act of the state of Arkansas which, in many respects, is similar to our own. It was there held that the protection of the statute was not limited to *bona fide* purchasers from the same person who executed the unrecorded conveyances, but extends to innocent purchasers from any one who appears from the *record* to be the owner of the title and interest which such grantor had when he made the unrecorded deeds. This conclusion was based upon these facts: Swamp land certificates had been issued to one Atkinson. Thereafter he and his wife conveyed the land de-

scribed in these certificates to W. G. Ford. Later, Atkinson endorsed these certificates to Mary S. Ford. Thereafter W. G. Ford conveyed the land in question to Mary S. Ford. None of these deeds or assignments were filed for record until the year 1887. Atkinson died in 1864, and the receiver of his estate, duly appointed by the proper court and fully empowered to sell and convey all the interest of the estate, sold the property described in the swamp land certificates to The Memphis Land & Timber Company, in 1883, by a deed which was duly recorded May 20, 1884. The question presented was, which grantee was entitled to hold the land? On the findings of fact Judge Sanborn, who delivered the opinion of the court, said:

"The grantor who has conveyed away his land by an unrecorded deed, it is true, has no title or interest remaining in himself, and yet his deed to an innocent purchaser for value avoids, by virtue of the registry statute, the prior conveyance and vests the title in the subsequent purchaser. If Atkinson, before his death, had conveyed his apparent equitable estate in these lands to such a purchaser, the unrecorded deeds and assignments held by the appellee would have been void as against the subsequent conveyance, because that would have carried the apparent title. After he died and the receiver of his estate was empowered to convey the equitable estate in these lands which Atkinson appeared to have had at his death, the receiver's deeds or assignments appear from an examination of the *records* to convey as perfect a title as the deed of Atkinson would have conveyed before he died. A purchaser from such a vendor seems to be clearly within the reason and policy of the statute."

This conclusion is based upon the ground that the policy of the recording act is to make the appar-

ent title of the grantor of *record* upon which the grantee has the right to rely superior in the hands of an innocent purchaser for value to the real title that is not of record. There can be no doubt regarding the soundness of this decision upon the facts stated, but for the reasons already given, to the effect that Mrs. Alexander had no right to rely entirely upon what the records in the recorder's office disclosed, it has no application.

Illinois has a recording statute very similar to our own, which was considered in *Kennedy v. Northrup*, 15 Ill. 148, and *Bowen v. Prout*, 52 Ill. 354. In the first case it was held that the words "subsequent purchasers" in the recording act means subsequent purchasers from the heirs as well as from the original grantor.

In the *Bowen* case it was held that a subsequent purchaser for a valuable consideration from an heir without notice of a prior unrecorded conveyance from the ancestor will be protected in his title as against such prior conveyance. These holdings are sound when the facts justify their application, but the decision in each case, so far as material to the case at bar, was based substantially upon the proposition that the purpose of the recording statute was to make potent the titles to real estate so that purchasers might know what title they were acquiring; that where a deed is not recorded, the title is apparently still in the grantor, and the law authorizes purchasers who are ignorant of the conveyances to deal with him as the real owner, and in case of his death, the heir becomes the apparent owner of the legal title, and it is, therefore, equally important and equally as just that the public may be led to deal with him as with the original grantor, if living. The soundness of this doctrine cannot be questioned, but it does not meet the proposition that the circumstances must be such

that the purchaser from the heir is justified in relying upon the title of the heir. Nothing is said on this subject in either of the cases, but the facts are such that it is apparent the purchasers from the heirs were fully justified in assuming that the respective heirs did have the title to the property which the records in the recorder's office disclosed stood in the name of their respective ancestors.

In the *Kennedy case* it appears that in 1818 one Weiant was the owner of certain premises. On the 19th day of June, of that year, he conveyed to Stewart by deed, which was not recorded until December 26, 1850. In 1820 Stewart conveyed to Kennedy, which deed was recorded May 23, 1821. Kennedy died intestate in 1839. What date Weiant died is not stated, but it appears that after he executed his deed to Stewart, and before that instrument was recorded, the heirs of Weiant executed a deed which was recorded before the Stewart deed, and the question was, which deed should prevail, the contest over the premises being between the heirs of Kennedy and the grantees of the heirs of Weiant. It was determined that the deed from the Weiant heirs was superior to the one which their ancestor had executed to Stewart, which was the one under which the Kennedy heirs claimed title. This discloses that such a length of time had elapsed between the date of the deed from Weiant to Stewart, and also between the date of Weiant's death and the execution of the deed by his heirs, that the grantees of the latter were justified in assuming that their grantors owned the premises in controversy.

In the *Bowen case,* one William Prout executed a deed in 1817, which was not recorded until August, 1862. In 1831 it appears that the heirs of Prout had partitioned between themselves the premises con-

veyed by the deed to Warren, and at once caused deeds to be executed and filed for record accordingly. Subsequently one of the heirs had purchased some of the interests of the others and the question was, whether the unrecorded deed was paramount to the title which he obtained from his co-heirs. It was held that it was not, and on facts from which it appears that the party who had acquired title from the heirs was justified in assuming that they were the actual owners of the premises in controversy.

In *Earle v. Fiske*, 103 Mass. 491, it was determined that an unrecorded deed is not valid after the death of the grantor as against one holding by a recorded deed from the grantor's heir without notice of the former deed. This holding was based upon these facts: Nancy A. Fiske conveyed certain premises by deed dated April 22, 1864, but not recorded until 1867. She died in 1865. Her son Benjamin was her sole heir, and in 1866 he executed and delivered a deed of the premises which was recorded in the same year. It was held that this deed was good as against the deed executed by Mrs. Fiske in 1864. But there, it will be observed, something like a year had elapsed after the death of the ancestor before her heir made any disposition of the premises.

In *Youngblood v. Vastine*, 46 Mo. 239, it was held that the heirs of a grantor in an unrecorded deed of land on his death become the apparent owners of the legal title, and a duly recorded conveyance by them of the same estate to an innocent purchaser will carry the title as against the first grantee, in like manner as if made by the ancestor. The facts in that case were, that Sarah G. Wright executed a deed of trust in July, 1859, which was not recorded until October, 1866. Mrs. Wright died in 1860, and on the first day of October, 1865, the property described in the

Wright deed was purchased from her heirs. The grantee received a warranty deed, which was recorded April 28, 1866. It was held that the latter deed was superior to the first; but, again, this conveyance was obtained under circumstances which would justify the grantee in assuming that the heirs of Mrs. Wright were the real owners of the property.

It is scarcely necessary to enter upon an analysis of the remaining cases cited by counsel for Mrs. Alexander or in the majority opinion. They, generally, announce that an unrecorded deed of land is valid against the grantor and against his heir, but if the grantor or his heir afterwards, for a valuable consideration, convey the land to another purchaser who has no notice of the unrecorded deed, the last conveyance will pervail against the first. This proposition is sound, when the facts are such that the purchaser is justified in assuming that the heir was the owner. This, each of the cases shows, was the situation.

In the circumstances of this case, Mrs. Alexander was not entitled to the protection of the statute which she invokes. Her levy was made a little more than sixty days after the death of Mrs. Reithman. The affairs of the estate could not have been closed by administration proceedings. No such length of time elapsed between the death of Mrs. Reithman and the date of the levy as would justify Mrs. Alexander in assuming that her judgment debtor was an heir to an undivided one-half interest in the premises in dispute. She had no right at the time she made the levy to rely alone upon what the records might disclose with respect to what real estate Mrs. Reithman owned when she died. That depended entirely upon facts independent of the record in the office of the recorder of deeds. It was her duty to have made inquiries. If she had, it appears she would have

learned the true facts; and not having done so, she purchased at her execution sale at her peril. It appears that Reithman had no interest in the premises; consequently none was acquired by the sheriff's deed.

Assuming, for the sake of the argument, that the majority opinion is right in holding that the lien of the Hallett mortgage is not superior to the rights of Mrs. Alexander, then the judgment denying Judge Hallett reimbursement out of the proceeds of the sale of the property for money advanced to pay taxes and redeem from tax sales, is at least erroneous, in so far as it relates to the sum advanced by him in November, 1906, about $264.00, to redeem the property from sale for the taxes of 1904 and to pay the taxes for 1905. In matters of partition, a court of equity will adjudicate all rights and equities growing immediately out of the common tenancy and adjust its decree to the full exigencies of the case.—*Packard v. King,* 3 Colo. 211. Where one in good faith, believing himself to be the owner of land, pays the taxes upon it or redeems it from a tax sale, and afterwards the land is adjudged to belong to another, the latter must reimburse the other to the extent of the money thus advanced. At the time Judge Hallett advanced the money for the purposes under consideration, Mrs. Alexander had received a sheriff's deed upon which her right to the judgment which this court has affirmed was predicated. There can be no doubt regarding Judge Hallett's good faith in asserting that his rights in the premises were superior to those of Mrs. Alexander. She has had the benefit of the money thus advanced. The statutes cited in the opinion which permit a party claiming an interest in an undivided estate in lands to pay the taxes on, or redeem his interest from, a tax sale, by paying his pro-

portionate part of the taxes due, or of the sum re-
quired to redeem the whole, do not estop Judge
Hallett from recovering from Mrs. Alexander the
proportionate share which she should have paid, and
of which she has had the benefit, but were merely
intended to permit a party to pay the taxes on or
redeem from a tax sale his proportionate part of the
whole, if he so elected. They do not change the rule
that a co-tenant may, if he so elects, pay the taxes on
or redeem from a tax sale of the whole and hold his
co-tenant for his share of the moneys thus expended.
That Judge Hallett should be paid from the proceeds
of the sale of the premises the $264.00 advanced is
so clear, and to deny him this relief is so manifestly
unjust, that argument or citation of authority is un-
necessary to demonstrate that the judgment of the
court on this proposition is not the law.

Counsel for Mrs. Alexander concedes the record
discloses that Judge Hallett was a creditor of Mrs.
Reithman at the time of her death. An heir always
takes property of his ancestor subject to the payment
of the debts of the latter, and in the circumstances of
this case, it must be conceded there is much force in
the contention of counsel that, independent of our
recording act, in equity and good conscience Mrs.
Alexander's rights in the premises are subject to the
debt due from the estate to Judge Hallett.

It is unnecessary, however, to discuss this ques-
tion, in view of the fact, that in my judgment Mrs.
Alexander acquired no interest whatever in the prem-
ises superior to those of Judge Hallett.

I am authorized to state that Chief Justice Camp-
bell agrees with my conclusion, that Judge Hallett
should be reimbursed for the $264.00 advanced to
redeem from tax sale and for taxes.