G. A. FRANTZ and J. H. LeSEUR, Appellants, v. ROLLAND E. VINCENT, Defendant, and HOMER W. VINCENT, Intervener, Appellees.

**Real property:** CONTRACT OF PURCHASE: EVIDENCE. In this action 1 in which the intervener claimed to own the realty attached by a creditor of the defendant, the evidence is reviewed and held to show a binding contract of sale between the intervener and defendant for the land, prior to the attachment.

**Same:** WAIVER OF OBJECTION TO TITLE: DEFECTIVE DEED: EQUITABLE 2 TITLE. A request by the vendee of land for the delivery of a deed thereto by the vendor is a waiver of any further objection to known defects in the title. And even though a deed thus delivered may be defective in its description of the property it will operate to pass an equitable title.

**Same:** ATTACHMENT: PRIOR CONTRACT OF SALE: EFFECT. In the ab- 3 sence of fraud the right of an attaching creditor in property is no greater than that of his debtor; so that where there has been a prior completed contract of sale of the property it is not subject to seizure by attachment against the grantor.

**Same:** ESTOPPEL. Intervener and defendant had negotiated a sale of 4 the land in question prior to plaintiff's attachment, and to settle the title had agreed to a construction of the will by which defendant acquired title, asking that the same be confirmed in him as devisee. Plaintiff contended that intervener was estopped from claiming the land because plaintiff's attorney, prior to the attachment, examined the records and was misled by the pleadings of intervener into believing that defendant still owned the land. *Held*, there was no estoppel, as intervener had no knowledge of plaintiff's interest in the land, and his pleadings were not inconsistent with his claim thereto under the contract of purchase.

*Appeal from Muscatine District Court.*—HON. D. V. JACK-SON, Judge.

TUESDAY, NOVEMBER 14, 1911.

ACTION at law upon a foreign judgment against defendant, Rolland E. Vincent. A writ of attachment was issued and levied upon certain real estate as the property of the defendant. A petition of intervention was filed by the intervener, whereby he claimed to be the owner of the land. There was a judgment for the intervener. Plaintiffs appeal.—*Affirmed.*

*L. A. Reiley* and *Arthur Springer,* for appellants.

*C. A. Carpenter* and *Oscar Hale,* for appellee.

EVANS, J.—The writ of attachment in question was levied upon June 17, 1909. The defendant was a nonresident of Iowa and a resident of the state of Pennsylvania. The intervener is a brother of the defendant, and was a resident of Muscatine county. The claim of the intervener is predicated upon the alleged purchase and sale of the attached real estate prior to the date of the levy. As against this claim the plaintiffs contend that there was no completed contract of sale between the parties prior to June 17, 1909. They also pleaded an estoppel. The facts are not in dispute. We have to do, therefore, only with the legal conclusions to be drawn from the undisputed facts.

The defendant, Rolland Vincent, had owned the land in question for several years, having acquired the same by devise from his father. In January, February, and March, 1909, negotiations were had by correspondence between him and his brother, Homer, who resided near the land, for the purchase and sale of the same. The intervener made an offer of purchase. The price and terms were agreed upon. These terms called for "merchantable title." Some question was raised by intervener's attorney as to whether the

1. REAL PROPERTY: contract of purchase: evidence.

father's will conveyed a fee-simple title to the defendant, Rolland Vincent, and he advised that action be brought to construe the will, and to obtain a confirmation of defendant's title in that way. This subject was dealt with in the correspondence between the parties, and was assented to by the defendant. The defendant was also advised that if all the heirs assented to 'the proceedings there would be no trouble in obtaining construction of the will, confirming his fee-simple title. On March 20, 1909, the correspondence between the brothers culminated in the following: "Memorandum of Agreement. Letts, Iowa, Mar. 20, 1909. R. E. Vincent sells his land joining my farm and undivided one-third interest in timber to H. W. Vincent for $8,000.00. R. E. furnishes abstract and merchantable title, leaves $4,000.00 in land at five percent for five years with privilege of partial payments. Transfer to be made as soon as possible and papers dated March 1, 1909. H. W. pays his share of expense, having will interpreted by the court, and if merchantable title can not be made, H. W. pays $350.00 cash rent for R. E.'s farm Sept. 1, 1909. H. W. pays four percent interest on money not left in land till transfer is made." This memorandum was formulated by the intervener. It was never signed by either party, but it was inclosed with a letter from the intervener to the defendant, and referred to in such letter as follows: "I inclose herewith outline of agreement of how we should deal on land." On March 26th the defendant replied by letter, as follows: "The agreement is O. K. Unless you care to go to further trouble, simply this memorandum is all I care for."

On May 21, 1909, the intervener wrote to the defendant as follows: "Letts, Ia., May 21, 1909. R. E. Vincent, Wellsboro, Pa.—Dear Brother: I saw C. A. Carpenter this a. m. He says the title of the land or the will, will be all O. K. in a few days. All have signed the notices and he says to make out the deeds, sign them before a notary and send them with the abstract to the Letts Bank

and I will have mortgage and money on hand soon.  How much money do you want to leave in the land?  I would like $5,000.00; if it's $4,000.00 I can get along.  .  .  .  Send those papers as soon as possible.  Homer W. Vincent."

On May 25th the defendant replied thereto as follows: "Wellsboro, Pa., May 25, 1909.  H. W. Vincent, Letts, Iowa—Dear Bro.: I inclose tax receipts for taxes due to date since abstract was made.  Have made out deed, signed and forwarded to bank as you said.  The abstract was left at German-American Savings Bank, Muscatine; you may get it by asking for it there.  I have written them to hand it to you when you call for it.  I leave it optional with you whether you give mortgage on the land or not.  In case you do not give mortgage have Mrs. H. W. sign note with you.  Wish to leave $4,000.00 in land; later on should you need use of some money, I may be able to help you out $500.00 or $1,000.00.  R. E. Vincent."

In pursuance of this letter, the intervener called at the bank and got the deed, and took it to his attorney and left it there.  The attorney discovered a formal defect in the description of one piece of land, in that the township had been designated by name, instead of by number.  A part of the land was described as located in *Cedar township,* Muscatine county, Iowa, instead of in township No. 76 north, etc.  If we understand it correctly, the attorney obtained a corrected deed, which eliminated this error.  Such corrected deed was not obtained until after June 17th.  The corrected deed was recorded, and the first deed was not.  No money was paid on the purchase until about July 1st.  The intervener learned of the attachment before he paid the purchase price.  The action to construe the will went to decree a few days subsequent to June 17th.  Such decree construed the will so as to confirm the defendant's title.  The substance of the appellants' contention is that upon this state of facts there was no completed contract of sale between the parties at any time prior to June 17th.

They also contend that the contract between the parties amounted to a mere lease until the date of the decree, confirming the defendant's title. On the other hand, the appellee contends that he held a valid and enforceable contract of purchase prior to June 17th, and that he was in possession thereunder, and that he became thereby the equitable owner, and that the land was therefore not subject to seizure under attachment or execution against his grantor.

It is to be noted that there is no claim of fraud or bad faith, so far as this feature of the case is concerned. We have to deal here only with a naked legal question. We think it must be said that the negotiations between the brothers had reached a stage, prior to June 17th, whereby they had bound themselves to each other to performance. If it could be said that the memorandum of March 20th was insufficient for that purpose, there is little occasion for debate on that question after the correspondence of May 21-25, and the acts of the parties pursuant thereto.

The letter of the intervener was a call for his deed, and was a clear waiver of any further objection to the title. The response of the defendant thereto indicated clearly that the minds of the parties had met. The act 2. SAME: waiver of objection to title: defective deed: equitable title. of the defendant in executing and forwarding the deed in compliance with the intervener's request was in intent, if not in fact, a full performance of the contract on his part. The deed so delivered was valid, notwithstanding its alleged defect. It was in every respect consistent with the prior negotiations. If the defect had been even more substantial, it would have been quite immaterial, so far as the equitable ownership of the land was concerned. The mistake could not operate to release the defendant from the intended performance.

As to the intervener, his conduct amounted to a further waiver of all objection to the title, and of all other objections, except the specified one. This objection went to

the form, and not to the substance, and did not impeach or repudiate in any degree or in any sense the agreement of the parties.

If at any date, subsequent to May 27th, either party to the contract had sought to repudiate the same, it is very clear to us that upon the evidence contained in this record specific performance could have been enforced. Regardless of the question, therefore, of whether the legal title passed by the deed of May 25th (a question which we do not now decide), we are of the opinion that the equitable title passed thereby, if it had not already done so under the previous correspondence and contract.

If there was a completed *contract* of sale prior to June 17th, then the land was not subject to seizure by attachment against the grantor. We do not understand appellant's

3. SAME: attach-  counsel to controvert this legal proposition.
ment: prior  Our previous decisions are decisive at this
contract of
sale: effect.  point. *Baldwin v. Thompson,* 15 Iowa, 504;
*Woodward v. Dean,* 46 Iowa, 499; *Scott v. Mewhirter,* 49 Iowa, 487; *In re estate of Miller,* 142 Iowa, 563.

In the absence of fraud the right of an attaching creditor can rise no higher than that of his debtor in the property attached.

II. The plaintiff pleaded an estoppel. The facts pleaded were that prior to the attachment their attorney examined the records and found no evidence of any out-

4. SAME: es-  standing interest or claim of any person to
toppel.  said land, except their debtor. That the attorney also discovered the pendency of the action to construe the will and read its allegations. In form this action was brought by the intervenor as plaintiff against his brothers and sisters, including the defendant. Appearance was entered therein by all the defendants. The petition prayed that the title of this defendant be quieted in the defendant as devisee of his father. In their plea of estoppel it was averred by the plaintiffs that they were mis-

led by the allegations of the petition and were induced to believe thereby that the defendant was still the owner of such land. It is not claimed that the intervenor knew anything about the plaintiff's researches, nor did he know that they were misled or deceived in any way; neither is it claimed that there was any intent on his part to deceive or mislead any one, directly or indirectly. The plea of estoppel can not be sustained. The intervenor was guilty of no wrong. He was ignorant of any right or interest on the part of the plaintiffs. There was nothing in his petition inconsistent with his contract. His contract called for "merchantable title." We reach the conclusion that the case was rightly decided in the trial court and the judgment is therefor *affirmed*.