ABE CROSSON, Appellant, v. H. F. KARTOWITZ, C. R. Strana-
han, and American Surety Company, of New York, a Corpora-
tion, Respondents.

(175 N. W. 868.)

**Mortgages — mortgage may be reformed while title of land remains with the mortgagor.**

1. A mortgage which contains an erroneous description, the result of the mutual mistake of the parties thereto, may be reformed so as to comply with the intentions of the parties, if such reformation is made while the title of the land remains in the mortgagor.

**Mortgages — rights of holder of unrecorded mortgage under attachment proceedings against land.**

2. Under § 5594, Comp. Laws 1913, which provides that every conveyance by deed, mortgage, or otherwise of real estate shall be recorded in the office of the register of deeds of the county where such real estate is situated, and every such conveyance not so recorded shall be void against any subsequent purchaser in good faith and for a valuable consideration of the same real estate, or any part or portion thereof whose conveyance, whether in the form of a warranty deed or deed of bargain and sale, etc., is first duly recorded; or as against any attachment levied thereon, or any judgment lawfully obtained at the suit of any party against the person in whose name the title to such land appears of record, prior to the recording of such conveyance. It is *held* that the attachment proceedings referred to means one against the person in whose name the land appears of record, and that the attachment proceedings must be against such person in order for the lien acquired by such attachment to come within the provisions of the recording act.

**Mortgages — necessity of recording mortgage.**

3. The lien acquired by attachment herein was subsequent in point of time to the execution and delivery of a prior unrecorded mortgage. The attachment was against a person other than the one in whose name the title of the land appeared of record at the time of the attachment. The recording act having no application, it is *held* the lien by attachment is inferior to the lien of the mortgage, and that the equity acquired by the attachment lien is inferior to the equity acquired in the land by the mortgage.

**Attachment — attaching creditor's lien attaches only to the interest of the defendant at time of attachment.**

4. In view of the provisions of the recording act, where the record title to the premises attached is vested in a party other than the defendant in the attachment, the attaching creditor's lien attaches only to the interest of the defendant in the land at the time of the attachment.

**Execution sale — purchaser who buys with notice of unrecorded conveyance not good faith purchaser.**

5. Where the attachment lien or the judgment is one which comes within the protection of the recording act, a purchaser at the execution sale is a good-faith purchaser for a valuable consideration. Where, however, the attachment lien or judgment is not such as to come within the provisions of the recording act, a purchaser who, prior to or at the time of the execution sale, has notice of a prior unrecorded conveyance, is not a good-faith purchaser for value, and his equity acquired by his purchase is inferior to that acquired by the prior unrecorded mortgage.

Opinion filed November 8, 1919. Rehearing denied November 25, 1919.

Appeal from a judgment of the District Court of Renville County, K. E. Leighton, J.

Judgment reversed.

Geo. I. Rodsater, for appellant.

Section 5594 of Compiled Laws of 1913, the statute on which this action hinges, has been before and considered by this court in a number of cases. We cite Investment Co. v. Nordhagen, 123 N. W. 390; Nordhagen v. Investment Co. 129 N. W. 1024; Mott v. Holbrook, 148 N. W. 1061; McCoy v. Davis, 164 N. W. 951; Ildvedsen v. Bank, 139 N. W. 105.

In the absence of statute the holdings are practically all one way. Leonard v. Fleming (N. D.) 102 N. W. 308, before enactment of present statutes.

"A purchaser of real property at a sheriff's sale under attachment acquires no title as against a deed delivered before levy of the attachment, but recorded after attachment and before judgment, under Comp. Laws, 3294, the attachment creditor not being a purchaser for value." Robin v. Palmer (S. D.) 67 N. W. 949.

"Title acquired by an unrecorded deed is superior to that obtained by a purchaser at an execution sale under attachment levied after the deed was made and delivered." Chicago, B. & Q. R. Co. v. First Nat. Bank (Neb.) 78 N. W. 1064.

"An attachment lien on land binds only the actual interest of the attachment debtor therein." Harroll v. Gray (Neb.) 2 N. W. 1040.

"A prior unrecorded deed made in good faith for a valuable consideration so as to pass the legal title will take precedence of an attach-

ment, provided such deed is recorded before any deed is recorded which is based upon such attachment." Franz v. Vincent (Iowa) 133 N. W. 121.

"In the absence of fraud, the rights of an attaching creditor can be no greater than those of the debtor in the property attached." Moorman v. Gibbs (Iowa) 39 N. W. 832.

"A lien by attachment is not good against a prior unrecorded deed although the attachment creditor had no notice." Bush v. Bush (Kan.) 6 Pac. 794.

Trust deed contained erroneous description of the property intended to be conveyed. Before correction a creditor of the grantor attached the land intended to be conveyed. After attachment correction was made by a new trust deed. Action to reform instituted. It was held that the action would lie, and that the attachment lien was subsequent and inferior to the deed. Carver v. Lassellute (Wis.) 15 N. W. 162.

In this case the transfer with the erroneous description was made prior to the attachment of the judgment lien. The court held that the conveyance could be reformed, and that the judgment lien would be subsequent to the lien created by the instrument containing the erroneous description. Daley v. Tomberlake, 94 Ala. 221.

"A judgment creditor is not protected by a statute requiring record of conveyances from the reformation by equity of a mistake in a description in a recorded mortgage." Coats v. Smith, 160 Pac. 517.

An attaching or judgment creditor is in much the same position as a trustee in bankruptcy. Zartmen v. Bank, 216 U. S. 134; McCall v. Knight Invest. Co. (Kan.) 94 Pac. 126; 6 Pom. Eq. Jur. § 681. 2 Pom. Eq. Jur. 3d ed. §§ 721--724 and especially note (d) to § 721.

In many jurisdictions where, by the express terms of the statute, these liens are superior to prior unrecorded conveyances and mortgages, the equity arising from a mistake, being an unrecordable interest, is held, notwithstanding the statute, to be superior to the subsequent recorded lien. In general, see Ft. Smith Mill. Co. v. Mikles, 61 Ark. 123, 32 S. W. 493; Kerschner v. Fracier, 106 Ga. 437, 32 S. E. 351; Rea v. Wilson, 112 Iowa, 517, 84 N. W. 539; 34 Cyc. 954.

We refer, without citing, to notes and text in 16 L.R.A. 668, and 21 L.R.A. 33.

*John H. Lewis,* for respondent.

"Every conveyance by deed, mortgage, or otherwise . . . not so recorded shall be void . . . against any attachment levied thereon or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance." Comp. Laws 1913, § 5594; Investment Co. v. Nordhagen, 18 N. D. 517, 123 N. W. 390; Nordhagen v. Investment Co. 21 N. D. 25, 129 N. W. 1024; Ildvedsen v. Bank, 24 N. D. 227, 139 N. W. 105; Mott v. Holbrook, 148 N. W. 1061; McCoy v. Davis, 164 N. W. 951; Cummings v. Duncan, 22 N. D. 534, 134 N. W. 712; Hallett v. Alexander (Colo.) 34 L.R.A.(N.S.) 337; 2 Pom. Eq. Jur. note to § 721.

In many jurisdictions where, by express terms of the statute, these liens are superior to prior unrecorded conveyances and mortgages, the equity arising from a mistake, being an unrecordable instrument, is held, notwithstanding the statute, to be superior to the subsequent recorded lien. In general, see Ft. Smith Mill. Co. v. Mikles, 61 Ark. 123, 32 S. W. 493; Kerchner v. Fracier, 106 Ga. 437, 32 S. W. 351; Rea v. Wilson, 112 Iowa, 517, 84 N. W. 539; Wilcox v. Bank (Minn.) 45 N. W. 1136.

GRACE, J. This is an appeal from a judgment of the district court of Renville county. The action is one wherein the plaintiff seeks to have a certain real estate mortgage reformed. A statement of the material facts are as follows: Wilhelmina Kartowitz, at the time of her death, was the record owner of the southeast quarter of section 33, township 163 north, range 87, west of the 5th principle meridian, Renville county, North Dakota. As near as we can ascertain from the record and the statement in open court at the time of the argument of the case, she died intestate about May 9, or June 9, 1916; the record would seem to show that her death occurred on June 9th. At the argument before this court, counsel for the plaintiff stated, he had examined the records in the probate office, and that her death occurred on May 9th. If her death were conclusively shown to have occurred on either date, it would not necessarily affect the validity of the mortgage which was dated June 9th, and could have been executed on that day after the time of her death. No real stress has been placed upon this point in the briefs, and we will assume, so far as the date of her death is concerned, that the validity of the mortgage is not affected thereby.

H. F. Kartowitz, one of the defendants, is one of her three heirs. The final decree in distribution of her estate has not been made, and the records in the office of the register of deeds of Renville county show, and at all times during the pendency of this action have shown that she was the record owner of the land above described.

On the 9th day of June, 1916, the defendants H. F. Kartowitz and C. R. Stranahan executed and delivered to the plaintiff a certain real estate mortgage whereby it was intended to mortgage the above-described land. The consideration stated in the mortgage was $2,000. The mortgage was filed for record in the register of deeds' office of Renville county on June 20, 1916. The mortgage, however, instead of containing the description of the land above described, contained the following description of land: The southeast quarter of section 33, township 164, range 87. On July 5, 1916, the American Surety Company of New York brought an action against H. F. Kartowitz, and attached the southeast quarter of section 33, township 163, range 87. In September, 1916, a new mortgage was taken by the mortgagee and on the same day filed and recorded in the office of the register of deeds of Renville county. This mortgage was taken to correct the error in the description of the mortgage first given. Judgment in the attachment action was rendered in favor of the plaintiff against H. F. Kartowitz, on February 9, 1917. An execution in the attachment action was issued March 27, 1917.

On May 1, 1917, this action was commenced, and a notice of lis pendens filed and recorded, in which was described the land intended to be conveyed in the mortgage of June 2, 1916.

On May 1, 1917, the date of the commencement of this action, the plaintiff had actual and constructive notice of the mistake in the description of the mortgage dated June 9, 1916, which is the mortgage sought to be reformed.

On May 2, 1917, the southeast quarter of section 33, township 163, range 87, was sold under the execution above mentioned which was issued in the attachment action, and was purchased by the American Surety Company.

The defendants H. F. Kartowitz and C. R. Stranahan have never been the record owners of the southeast quarter of section 33, township 163. The plaintiff claims it to be a fact that, before the levy of the attachment, defendant had actual notice of the existence of plaintiff's

mortgage on the land in section 33, township 163. This, however, is denied by the defendant. We will further advert to this contention later in the opinion.

The plaintiff's complaint is in proper form and substantially sets forth the facts above mentioned. The defendants answer in substance to a denial of all the facts alleged in the complaint, with the exception that it admits that at the time of the attachment and levy thereof by the defendants, the records in the office of the register of deeds of Renville county, North Dakota, did not show that any of the defendants in that action had any interest in said described land, and further admits that the interest of H. F. Kartowitz in said premises is based on heirship.

The appellant desires a review of the entire case in this court. It does not appear that there was any other specification of error made or served in the appeal. The questions presented for decision in this case are not many. They may be stated as follows:

(1) May a mortgage which contains an erroneous description, the result of the mutual mistake of the parties thereto, be reformed so as to be in compliance with the intentions of the parties?

(2) If such mortgage is reformed, does it become a superior and prior lien to the lien of the attaching creditor, where the record title to the premises attached is in the name of one who is neither mortgagor nor defendant in the attachment case?

(3) The record title to the premises attached being vested in a party other than the defendant in attachment, does the attaching creditor's lien attach to anything but the actual interest of the defendant in attachment?

(4) Where a purchaser at the sale under execution has actual and constructive notice of a mortgage intended to cover the land sold, does he acquire an interest superior or subject to the mortgage?

As to the first of these questions there is no need of discussion. That a court of equity has the right and power to reform an instrument that when reformed it will comply with the intention of the parties, there is not the least doubt, if such reformation is made while the title of the land remains in the mortgagor.

The second question is one which is much more difficult to answer. The answer thereto depends upon the construction of our recording act

which is § 5594, Comp. Laws 1913, which in so far as it is material to this controversy reads thus: "Every conveyance by deed, mortgage or otherwise, of real estate within this state, shall be recorded in the office of the register of deeds. of the county where such real estate is situated, and every such conveyance not so recorded shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate, or any part or portion thereof, whose conveyance, whether in the form of a warranty deed or deed of bargain and sale, deed of quitclaim and release, of the form in common use or otherwise, is first duly recorded; *or as against any attachment levied thereon, or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance.*

"Every conveyance aforesaid, heretofore executed, and not so recorded, and which shall not be so recorded within three months from the taking effect of this article, shall be void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate or any portion thereof, claiming under or through a deed of quitclaim and release, of the form in common use, heretofore so recorded, or which may be recorded before such prior conveyance."

The words of the statute above set forth which we are required to construe is that which is underscored. The person, in whose name title to the land appears at the time the attachment was levied on such land, was Wilhelmina Kartowitz. She was not a party to nor a defendant in the attachment proceedings. Neither was any judgment obtained against her, nor was she a defendant in the action.

The action was brought by the American Surety Company, against Herman Kartowitz. In the course of that action, the plaintiff therein caused a warranty of attachment to be issued and served, and by virtue of said writ of attachment a levy was made upon the southeast quarter of section 33, township 163, the record title of which land at the time of the levy was in the name of Wilhelmina Kartowitz.

As we construe the statute, the levy of the attachment upon land creates a superior lien only as against outstanding, unrecorded mortgages, deeds, conveyances, liens, etc., theretofore executed and delivered to the holders thereof by the person in whose name the title to such land appears of record, unless the party maintaining the attachment proceedings has actual notice of such outstanding conveyances.

The defendant in the attachment proceedings did not have record title to the land. Hence, the attaching creditor has not brought himself within the terms of the statute so as to invoke the same in its behalf.

For the purpose of illustration and analysis let it be assumed that the suit of the American Surety Company instead of being against Herman Kartowitz, had been against Wilhelmina Kartowitz, in whose name the record title appears, and it had proceeded by attachment and levied the same upon the land, which the record shows to be in her name; and assuming, further, that she had theretofore executed and delivered conveyances which were outstanding and unrecorded of which the American Surety Company had no actual notice or knowledge,—it is clear that the lien so acquired by attachment would, under the recording act, be a prior lien to such outstanding, unrecorded conveyances.

Such a case as we have assumed would clearly come within the provisions of the statute. In the case before us, however, the American Surety Company has not brought itself within the terms of the statute.

The party whom it sued did not have record title to the land in question, nor was the record title of the land attached, in his name; and, for it to be entitled to the priority claim under the recording act, it would appear from the language of that act that the suit and the attachment proceedings must be against one in whom the record title appears at the time of the suit and the levy of the attachment.

Let us assume that part of the recording act under consideration read as follows: "Or as against any attachment levied thereon, or any judgment lawfully obtained at the suit of any party against the person in whose name the title to such land appears, or at the suit of any party against a person having any interest in the land whether such interest appears of record or not."

If the recording act did so read, the American Surety Company's present legal status would be in agreement therewith. If the construction is given to the statute for which it contends, the statute would have to be construed to mean that which the above assumed language sets forth. "Should the language of the recording act be added to by judicial construction so as to include interest in land, the title of which is not of record?" To give such a construction, it would appear that much would have to be read into the recording act.

While the recording act should receive a liberal construction to effect

its purposes, it should not be extended to include matters and conditions which are contrary to its plain terms.

A writ of attachment is issued in connection with an action which has been commenced. A proceeding in attachment cannot stand alone. When properly issued upon a statutory ground, the purpose of the same is to attach and safely keep so much of' the defendant's property not exempt from execution as may be sufficient to satisfy the plaintiff's demand, etc.

As an attachment can be levied only in connection with a suit commenced, the attachment referred to in the section which we are discussing must be connected with a suit. Then with what suit is it connected, and what is the intention of the statute in this regard? It is our opinion that the attachment is permitted to be levied at the suit of any party against the person in whose name the title to such land appears of record, a suit having been commenced to recover a demand from such person.

The alleged lien of attachment by the American Surety Company was not procured in an action against the party in whose name the title to such land appeared of record. If it procured a lien at all, it is not one within the contemplation of § 5594.

If the American Surety Company acquired knowledge that H. F. Kartowitz had an interest in the land in question by reason of his being one of the heirs of Wilhelmina Kartowitz, it could not have acquired such knowledge from an examination of the record title of the land. There was nothing of record showing that he had any interest in the land. Hence, if such knowledge was acquired by the American Surety Company, it was not from the record title, but from some other source. If this be true, no reliance was placed upon any knowledge acquired from the record title, and the American Surety Company has not brought itself within the protection of the recording act. The recording act refers to instruments which appear of record, and one seeking the protection of it must rely upon the record.

The American Surety Company, however, claims that H. F. Kartowitz being an heir of Wilhelmina Kartowitz, whose death had previously occurred, that within the contemplation of the recording act his interest did appear of record, and cite as authority for this position the Colorado case entitled Hallett v. Alexander, 50 Colo. 37, 34 L.R.A. (N.S.) 328, 114 Pac. 490, Ann. Cas. 1912B, 1277.

We do not, however, regard this case as authority, for the reason that the Colorado statute which such decision construes is materially different from the statute of North Dakota. The statute of Colorado, being § 836 of Mills's Annotated Statutes of the state of Colorado for the year of 1912, reads thus: "All deeds, conveyances, agreements in writing of, or affecting title of real estate or any interest therein, and powers of attorney for a conveyance of any real estate or any interest therein, may be recorded in the office of the recorder of the county wherein such real estate is situate, and from and after the filing thereof for record in such office, and not before such deeds, bonds and agreements in writing shall take effect as to subsequent bona fide purchasers, and encumbrances by mortgage, judgment or otherwise not having notice thereof."

It will be noticed that this statute does not contain similar words to our statute which are the very subject of the contention between the parties to this suit, that is, the words of our statute above set forth which are underscored.

Having arrived at the opinion that the American Surety Company did not bring itself within the provisions of the recording act, the next matter for consideration is to determine, exclusive of the recording act, the relative priority of the mortgage in question and the alleged attachment lien. It thus becomes necessary to analyze the circumstances surrounding the execution and delivery of the mortgage. We think it is conceded, and if not so it must be conceded, that H. F. Kartowitz and Stranahan executed and delivered the mortgage to the plaintiff in this action in which they intended to mortgage to him their interest in the southeast quarter of section 33, township 163, for the purpose of securing a certain $2,000 promissory note. By the mutual mistake of the parties, the wrong township was described in the mortgage; in other words, township 164, instead of the proper township 163. This mistake did not invalidate the mortgage as between the parties; it still remained a valid equitable mortgage upon the land intended to be conveyed; and, upon such mutual mistake being proven in a court of equity, such mortgage would be reformed so as to comply with the intentions of the parties at the time of executing the same.

In point of time, the mortgage was prior to the date of the levy of the attachment. Such mortgage gave to the plaintiff herein an equitable interest in the land, prior to any interest acquired by reason of the lien claimed by attachment.

The lien, if any, acquired by attachment gave to the American Surety Company an equitable interest in the land, which was acquired subsequent to the equitable interest acquired in the land by plaintiff.

The recording act having no application, which of such equities should be deemed the superior? It would seem that the equitable interest which was prior in point of time would constitute a superior equitable interest in such land. In point of time, the plaintiff by his mortgage acquired a superior equitable interest, which must be considered to be, and is prior to, the equitable interest, if any, acquired by the American Surety Company.

The American Surety Company, however, contend that the Minnesota case of Wilcox v. Leominster Nat. Bank, 43 Minn. 541, 19 Am. St. Rep. 259, 45 N. W. 1136, is decisive in its favor of the equities involved in the case at bar. That case, however, presents an entirely different state of facts to this. In that case, one A. G. and W. F. Wilcox, each owned an undivided half of 640 acres of land, which constituted one farm.

On the 23d of February, 1886, A. G. Wilcox and his wife executed a deed to one Thornburgh, by which it was intended to convey the entire farm. Then Thornburgh executed a deed to the wife of A. G. Wilcox. By mistake the scrivener who drew the deeds failed to insert the description of the land. Several months thereafter the mistake was discovered, and new conveyances were executed which contain correct descriptions, which deeds were recorded February 28, 1888. In the meantime, however, and just prior to the time of recording the new deed, a judgment in favor of one Leominster was docketed in the county in which the land was situated.

The plaintiff in that case, the wife of A. G. Wilcox, claimed that her equity to have the deed reformed gave her a superior position; that she was entitled to have her deed reformed, and that it should have precedence over the judgment in question. The court denied her any relief, and very properly so; for in that case the title to the land remained of record in the name of A. G. Wilcox, the person against whom the judgment was obtained.

At the time the judgment was docketed against him in the county in which the land was situated, he was the record owner of the title thereto; and land appeared in his name. The judgment creditor had no notice of the outstanding deed. That case came squarely within the

provisions of the Minnesota recording act, and, under the same state of facts, the case would come squarely within the provisions of our recording act; for the land at all times remained in the name of the record owner until the docketing of the judgment. The case is entirely different from the one at bar. • In this case, the land sought to be subjected to the lien of the attachment never appeared of record in the name of H. F. Kartowitz.

It is, therefore, our opinion that the plaintiff's mortgage constituted a prior lien to that of the American Surety Company so far as the question of priority is decisive of the issues involved herein.

The American Surety Company, however, claims there was no consideration for the mortgage, and in effect claims that it was fraudulent. The pleadings form no issue upon either of these matters. No consideration is a defense which must be pleaded, and the same is true of fraud. The answer contains no allegations relative to no consideration or fraud. Conceding, however, that there may be some evidence in the record tending to question the consideration, and assuming that the proper motion was made to amend the pleading to correspond with the proof, we are still of the opinion that the American Surety Company must fail in this action.

The plea of no consideration is an affirmative defense, and he who pleads it or relies upon it has the burden of proving it by preponderance of the evidence. In this respect, we are of the opinion the American Surety Company has wholly failed. The promissory note which the mortgage secures imports a consideration as does the mortgage. In addition to this, the plaintiff has adduced considerable testimony of a positive character which tends to show a valid consideration for the mortgage. Such negative testimony as the American Surety Company elicited on cross-examination of plaintiff's witnesses does not overcome the presumptions of a good and valuable consideration for the mortgage, and the positive testimony relative to the consideration thereof.

Fraud is not pleaded, and there is no competent evidence to establish it.

If the attachment lien had been secured and an equity thus acquired in the land prior to the time of the execution and delivery of the mortgage by which an equitable interest was acquired in the land, then such attachment lien would be prior to the mortgage. Such attachment lien

was not so secured; it was secured subsequent in point of time to the lien of the mortgage, and the equity in the land acquired by the attachment lien is subject, and inferior, to the equity acquired by the mortgage.

Respondent cites in support of its contentions the following cases: Enderlin Invest. Co. v. Nordhagen, 18 N. D. 517, 123 N. W. 390; McCoy v. Davis, 38 N. D. 328, 164 N. W. 951; Ildvedsen v. First State Bank, 24 N. D. 227, 139 N. W. 105; Mott v. Holbrook, 28 N. D. 251, 148 N. W. 1061.

These are all decisions by the supreme court of this state. They, however, in no manner, support the contentions of the respondent. In each of the cases, the judgment or attachment lien was against the record owner of the title, and were properly held to be good as against an unrecorded conveyance of which they had no notice.

In those cases and the circumstances and facts contained in them, a purchaser at an execution sale on a judgment or an attachment lien would be a subsequent purchaser in good faith and for value. This for the reason that the execution sale was upon a judgment or a lien that was a prior lien under the recording act. The facts and circumstances are quite different in the case at bar.

It has been determined in this case that the land attached, and against which the attachment lien is claimed, at the time of the attachment, was not in the name of the party against whom the attachment proceedings were brought. The attachment proceedings in this case are not as contemplated by the statute, as they are not against the party in whose name the land appears of record. Hence, our recording act does not apply, and the lien acquired by such attachment was one acquired otherwise than by the provisions of the recording act.

It has also been determined that the attachment lien was subsequent in point of time to the lien of the mortgage; the recording act having no application to this state of fact, it must follow that a purchaser of such land at the execution sale of such attached land who had actual notice of the prior existing lien of the mortgage acquired an interest in such land inferior to that conveyed by such outstanding prior unrecorded conveyance, of which he had actual notice at the time of such sale.

The attachment lien in this case bound only the actual interest of the attachment debtor in the land at the time the attachment was levied.

His only actual interest in the land at the time of the attachment was the residue remaining after the execution and delivery of the mortgage conveying an interest in the land as evidenced by the mortgage. Chicago, B. & Q. R. Co. v. First Nat. Bank, 58 Neb. 548, 78 N. W. 1064; Frantz v. Vincent, 152 Iowa, 680, 133 N. W. 121; Bush v. Bush, 33 Kan. 556, 6 Pac. 794.

The judgment of the District Court is reversed, and the case is remanded to it for further proceedings not inconsistent with this opinion.

The appellant is entitled to statutory costs of appeal.

BIRDZELL and BRONSON, JJ., concur.

ROBINSON, J. I dissent.

CHRISTIANSON, Ch. J. (dissenting). Under our statute every conveyance of real estate in this state, by deed, mortgage, or otherwise, unless recorded in the office of the register of deeds of the county where such real property is situated, is "void as against any subsequent purchaser in good faith, and for a valuable consideration, of the same real estate or any part or portion thereof, whose conveyance, whether in the form of a warranty deed or deed of bargain and sale, deed of quitclaim and release, of the form in common use or otherwise, is first duly recorded; or as against any attachment levied thereon, or any judgment lawfully obtained, at the suit of any party, against the person in whose name the title to such land appears of record, prior to the recording of such conveyance." Comp. Laws 1913, § 5594. The provision extending the benefit of the recording act to attaching creditors was incorporated into our laws in 1903. See Laws 1903, chap. 152. It was borrowed from Minnesota. See Ildvedsen v. First State Bank, 24 N. D. 233, 139 N. W. 105; Minn. Stat. 1894, § 4180.

At the time of her death, Wilhelmina Kartowitz was the actual and record owner of certain real estate. Upon her death her heir or heirs became the apparent owner or owners of the legal record title, and the public might deal with such heir or heirs in the same manner and with the same effect, so far as the recording acts are concerned, as they might have dealt with the deceased during her lifetime with respect to the same property. 23 R. C. L. p. 249, § 116; Welch v. Ketchum (1892)

48 Minn. 241, 51 N. W. 113. "Following the record as a guide the title seems to be in the heir at the moment of the ancestor's death." Wade, Notice, § 222. See also 23 R. C. L. p. 249, § 116; Hallett v. Alexander, 50 Colo. 37, 34 L.R.A.(N.S.) 328, 114 Pac. 490, Ann. Cas. 1912B, 1277. And "a purchaser from an heir for valuable consideration and without notice will be protected to the same extent as though he had purchased from the ancestor himself." Webb, Record of Title, § 184. In other words, for all purposes contemplated by the recording act an heir will be deemed the owner and holder of the record title, and an instrument of conveyance by him will be deemed an instrument properly in the chain of title. I am, therefore, of the opinion that the attachment levied by the American Surety Company in its action against H. F. Kartowitz falls within the provisions of § 5594, supra. At the time the attachment was levied and notice of levy filed against the real estate involved in this controversy, there was no mortgage of record against the premises. In fact the plaintiff had no mortgage which could be so recorded. There is also a strong probability that there was no consideration for the mortgage, and that it was executed as part of a fraudulent scheme to enable H. F. Kartowitz to prevent the American Surety Company from collecting its claim against him.